**LANSBURGH'S, INC., Appellant,**

v.

**Sidney RUFFIN, Appellee.**

**No. 9225.**

District of Columbia Court of Appeals.

Argued Jan. 13, 1976.

Decided April 18, 1977.

---

Edward J. Lopata, Washington, D. C., with whom William D. Appler, Silver Spring, Md., Richard W. Boone, Washington, D. C., and Douglas S. Hoff, Chevy Chase, Md., were on the briefs, for appellant.

William R. Kearney, Rockville, Md., for appellee.

Before KELLY, GALLAGHER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from a judgment for the plaintiff in a false imprisonment suit. After a jury trial, the plaintiff (appellee) was awarded a judgment of $38,000 of which $25,000 was for punitive damages. The issues on appeal are whether the trial court erred in (a) not granting motions for directed verdict and in declining to enter a judgment notwithstanding the verdict and (b) in submitting the issue of punitive damages to the jury. We will set forth the pertinent facts in the light most favorable to appellee, as we must.

Appellee Ruffin was employed as an Assistant Manager of a shoe department, operated by Wohl Shoe Company[1] in then Lansburgh's Department Store in this city. A female customer came to the shoe department to exchange a pair of boots. Appellee testified that she had been in the store a week previously to return boots and at that time appellee Ruffin "wrote up a 'no sales' slip." This was to explain the absence of a sales slip for the boots if the customer were to be checked later by store security.[2] When the customer returned a week later with the same boots he informed her he could not exchange the boots but, instead, referred her to the manager for the latter's decision. Shortly thereafter, according to appellee, the customer went to the first floor as the manager had left the counter where they were. The manager at the first floor called appellee to inquire concerning the problem. Appellee advised him that the manager in his department had gone upstairs "to Security" with a pair of boots. The manager on his floor then returned to appellee and informed him the Security Officer wished to see him and he proceeded to that office.

Appellee testified that he recognized it was appropriate for the Security Officer to request an employee to come to his office for communication. As an employee, he had been to the Security Office previously in connection with shoplifting by others. Upon arrival there on this occasion, he said he did not consider that he was then being detained. While there, he was questioned by security employees concerning his sales practices. Investigation encompassing the previous period of the sale in question had been conducted. The receipts and sales slips were reviewed and there was no record of the sale of the boots nor was there a cash overage for the pertinent period. In other words, no record of the sale was discovered.

---

1. The trial court directed a verdict in favor of Wohl Shoe Company.

2. Appellee later testified that it was store policy to refer a customer either to a supervisor, customer relations or security and that he was not authorized to make a refund in the circumstances.

Appellee said he was questioned for some two and a half hours[3] and was given an opportunity to supply the amount of the cash deficit for the sale but he declined to do so. He testified that the security employees' coats were not being worn and that their pistols and handcuffs were attached to their belts. There was contrary testimony that pistols were not being worn and that it was a violation of store policy to do so but, viewing the conflicting evidence in the light most favorable to appellee, we accept that pistols were being worn. Appellee also testified, however, that he was not at any time threatened with physical harm by the Security Officer.

Near the end of appellee's stay in the Security Office he was told he was going to be "booked" and he was then told to empty the contents of his pockets. After these were examined, he was escorted to the personnel office where he was notified that he was discharged from employment. He then departed the store and no criminal charge was made against him.

The nature of the questioning in the Security Office was illustrated by appellee's own testimony:

> He [security officer] said, "Either you pay for the boots or I'm going to ask you to step down or terminate you." I said, "I will not resign, myself." I said, "If it's that way, you're going to have to terminate me, yourself."
>
> So, it was about twenty to thirty minutes, I was in there talking to him. So, he had a big sign on the wall. It was the "Rights."
>
> Q. What rights?
> A. All I remember, I didn't really read it, because I was in there to co-operate with him, because, you know, I had not did any crime. He said, "Read the sign."
> Q. Did the security guard tell you to read the sign?
> A. Yes, he did.

Q. All right. Then, what happened?
A. Then we started talking. He said, "Mr. Ruffin, do you remember about two weeks ago, we was talking, and I was saying to you how fine work you were doing and for you to be Assistant Manager, all you have to do is just do your job and do everything in order?" I said, "Yes, I do remember, because on the occasion, me and Mr. Holder was talking."

\* \* \* \* \* \*

BY MR. KEARNEY:
Q. Continue.
A. So, he told me, he said, "Do you remember the time that I told you, just to go and be Assistant Manager and do your job, because everybody on the second floor and also in store were looking up to you?" I told him yes, I could remember the time he told me that.

So, he said, "Do you remember the time I told you that you probably would become a Manager?" I said, yes, I could. He said, "Now, you aren't going to Manager Training School." I said, "Yes, I am."

So, he said, "I want to know now, if you believe this young lady when she said you sold her the boots, you sold her the boots. And, anyhow, I just want you to pay for the boots." He said, "Boy, don't mess up your record here." He said, "have you ever been arrested for anything?" I said, "No, I haven't."

He said, "Well, I want you to pay for these boots. If you don't pay for these boots, we're going to arrest you."

The principal issue is whether the trial court erred in not granting a directed verdict[4] and, subsequently, in denying the motion for judgment notwithstanding the verdict.

As we stated initially, we have reviewed the evidence in the light most favorable to appellee. In doing so, however, we have not ignored certain undisputed evidence of

---

3. Appellant's evidence was that the period of questioning was considerably less but, for purposes of this review, we must accept appellee's testimony on this.

4. A motion for directed verdict was made at the close of plaintiff's evidence and again at the close of all evidence.

appellant.[5] While more frequently than not, reviewing courts have occasion to look primarily to the evidence of the opposing party in considering motions for directed verdict this is not to say that review must be restricted to that evidence.

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence— not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Boeing Company v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969) (en banc). In *Carlson v. American Safety Equipment Corp.,* 528 F.2d 384, 385 (1st Cir. 1976), the court said:

We examine the facts in the light most favorable to plaintiff [party opposed to motion] but *without neglecting the uncontradicted evidence introduced by defendant.* [Emphasis added.][6]

When the Security Officer requested appellee's presence in his office for questioning there was no detention at that point. One does not lose one's legal rights by virtue of having the status of an employee. On the other hand, up to a point an employer has the right to question employees about their sales practices generally and in a particular case. *Proulx v. Pinkerton's National Detective Agency, Inc.,* 343 Mass. 390, 178 N.E.2d 575 (1961); *Roberts v. Coleman,* 228 Or. 286, 365 P.2d 79 (1961). Taken too far, however, a detention of the employee may result depending upon the circumstances, including the length, nature and manner of interrogation. *Compare Proulx v. Pinkerton's National Detective Agency, Inc., supra.*

Here, we agree with the trial court that a detention occurred at a late point in the questioning when the Security employees said he would be "booked"[7] and he was told to empty his pockets. The question is whether there was probable cause as a matter of law for the detention. If so, the "imprisonment" (detention) was not legally "false," so to speak.

While there is no judgment here against appellant for false arrest[8] we must view the judgment against appellant for false imprisonment as being synonymous for present purposes. In this context, false arrest and false imprisonment are frequently without realistic distinction. *Shaw v. May Department Stores Co.,* D.C.App., 268 A.2d 607, 609 n. 2 (1970).

This brings us to the heart of the issue in this case, that is to say, whether there was probable cause as a matter of law to warrant the detention that took place when the Security Officer said he would be "booked" and when the search of appellee took place. As to the search, one of the store Security Officers, who was on crutches due to a leg injury, patted him down and requested that he empty his pockets and the contents of his wallet on the desk. After an examination, the contents were returned to him. Nothing material was found. Shortly thereafter, he was escorted to the Personnel Office and dismissed from employment.

■ In false imprisonment cases in this jurisdiction, probable cause is a mixed question of law and fact. It is for the jury to determine the facts when they are in dispute. *Neisner Brothers, Inc. v. Ramos,* D.C. App., 326 A.2d 239 (1974). If, however,

---

5. *E. g.,* the undisputed testimony that the pertinent store records were reviewed before appellee was called to the Security Office and no sale was found. This evidence was hardly open to appellee to dispute and it is only sensible that this testimony should be accepted in assessing whether probable cause was established as a matter of law.

6. *See also Simblest v. Maynard,* 427 F.2d 1 (2nd Cir. 1970); *Stief v. J. A. Sexauer Manufacturing Co.,* 380 F.2d 453 (2nd Cir. 1967).

7. At one point the term "arrest" was also used. We view the terms "book" and "arrest" as being used synonymously here.

8. The trial court directed a verdict in favor of appellant on a count of false arrest on the theory, apparently, that appellee was not formally charged with a criminal offense but, rather, was discharged from employment. While this does not necessarily follow, there is no issue on appeal concerning the count of false arrest.

viewing the evidence in the light most favorable to appellee the uncontroverted and undisputed facts constitute probable cause as a matter of law a defense motion for a directed verdict should be granted. *Prieto v. May Department Stores Co.*, D.C.App., 216 A.2d 577 (1966).

■ Viewed in this fashion, unlike in *May Department Stores Company, Inc. v. Devercelli*, D.C.App., 314 A.2d 767 (1973), there was here no material factual conflict for resolution by the jury. While there were conflicts in the testimony as to what occurred in relation to the questioning and detention of appellee these conflicts are not material as the fact remains that viewing the evidence [9] in the light most favorable to him it is evident that there was probable cause to detain him in a reasonable manner and for a reasonable period. To say it another way, the distinction between our conclusion here and our decision in *Devercelli* is that in *Devercelli* we found a conflict in the evidence the resolution of which was crucial to probable cause. Here, no material conflict in the evidence need be resolved for that determination.

As we have said, being a store employee the Security Officers of the store were entitled to question him after receiving the information that he had previously given no sales slip for the prior purchase, an undisputed violation of the store's sales policies. Upon further investigation, there was reasonable cause to believe that appellee had appropriated the proceeds from the sale of the boots. At this point, there was probable cause for detention by the Special Police [10] (Security Officers) for a reasonable period for the purpose of additional investigation of the employee's conduct. The detention which took place at the end of the questioning was very brief and not excessive. He was then almost immediately dismissed from his employment. The detention was not unreasonable.

We conclude (a) there was no factual issue to present to the jury for resolution in order to determine whether probable cause existed and (b) the evidence established probable cause for the detention as a matter of law.

Where there is a material conflict in the evidence which must be resolved by the factfinder before the existence or non-existence of probable cause may be determined, the trial court should submit the factual issues to the jury with appropriate instructions. *See Nichols v. Woodward & Lothrop, Inc.*, D.C.App., 322 A.2d 283, 285 n. 1 (1974). It may be that in some cases the factual conflicts between the parties are of such a simplified nature as to enable the trial court to instruct to this effect: if the jury accepts the defendant's version of the pertinent facts probable cause exists as a matter of law but if it accepts plaintiff's version probable cause does not exist. In most cases, however, the issue will probably not be so simple and the trial court must delineate what pertinent evidence constitutes probable cause and what evidence does not. An instruction should follow as to the ensuing requirement upon the jury in each event, that is, as to the finding which should be returned on the question of probable cause.

But where, as here, no such testimonial conflicts need be resolved and the pertinent evidence establishes probable cause as a matter of law a motion for directed verdict on this ground should be granted. *See Smith v. Tucker*, D.C.App., 304 A.2d 303 (1973); *Wolter v. Safeway Stores, Inc.*, 80 U.S.App.D.C. 357, 153 F.2d 641 (1946). We conclude it was error not to grant either a

---

9. The pertinent evidence included undisputed evidence adduced by appellant (defendant) as we have previously related.

10. The Security Officers were authorized Special Policemen. D.C.Code, 1973, § 4–115. The scope of the authority of special policemen to arrest without a warrant is coterminous with that of regular law enforcement officers within the bounds of their jurisdiction. D.C.Code 1973, § 23–582(a). The special policeman does not have the status of a regular policeman, however. Rather, they are appointed for the purpose of protecting the property of those who pay for their services. D.C.Code 1973, § 4–115.

directed verdict or judgment notwithstanding the verdict.[11]

*Reversed and remanded with instructions to enter judgment for defendant Lansburgh's, Inc.*

---

11. In view of our disposition of the case it is unnecessary to reach the issues of the punitive damages and special damages of $3,000 for "loss of employment," both of which would be dubious here even if the judgment were to be affirmed.