SAFEWAY STORES, INC., Appellant,

v.

George I. KELLY, Appellee.

Nos. 80–474, 80–659 and 80–686.

District of Columbia Court of Appeals.

Argued Jan. 6, 1982.

Decided July 1, 1982.

William L. Fallon, Washington, D. C.,
with whom Arthur B. Hanson, Washington,
D. C., was on the brief, for appellant.

Vincent Nappo, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

This is an appeal from a jury finding of liability against Safeway Stores, Inc., for assault and battery, and false arrest arising from the actions of a security guard working at a Safeway grocery store. Appellant contends that it is not liable in respondeat superior for these actions and that in any event probable cause existed for the arrest of appellee.[1] Preliminarily, we hold that Safeway is vicariously liable for the actions of the guard acting within the scope of his employment. Finding probable cause for the arrest of appellee but sufficient evidence to support the jury finding of excessive force in making the arrest, we reverse the jury verdict of false arrest but affirm the verdict of assault and battery. We also affirm the trial court's grant of a remittitur.

I

One evening in February 1976, as George I. Kelly entered a Safeway store in Southeast Washington, D.C. to shop for groceries, he noticed that an automatic exit door was not working properly and that it was necessary to exert pressure on the door to push it open. According to appellee's testimony, he completed his shopping and later advised a cashier that he wanted to make a complaint about the broken door. The cashier suggested that Kelly talk to the assistant manager, Mr. Wheeler. When Kelly did so, the assistant manager responded that the door would be fixed in two or three months, and that Kelly was always making trouble for him. Kelly testified that he had never made a complaint to Mr. Wheeler before that night and also stated that the assistant manager said to him, "[B]oy, if you don't

get out of this store, I'm going to have you arrested." Kelly responded, "[W]ell, call the police, I want to file a complaint." He explained that it was unclear to him that the assistant manager was directing him to leave the store. Holding his bag of groceries, Kelly stood in the front of the store to await the police. The assistant manager beckoned to a security guard, Larry Moore, who was assigned to the store by Seaboard Security Systems, Ltd., and at the same time asked someone in the back of the store to call the police. Within a few minutes Officer Knowles of the Metropolitan Police Department came into the store. According to appellee, Knowles first spoke with the assistant manager, who had called him over, and then approached appellee and said, "[T]he manager wants you to leave the store." Kelly testified that he was about to respond to the officer when the security guard approached from the rear and grabbed him around his throat; simultaneously, the police officer stuck his knee into Kelly's chest. The two pushed him to the ground, and handcuffed him. Without resistance from Kelly, the officer and the security guard took Kelly to the back of the store where he stood in handcuffs in view of store customers. After 10 or 15 minutes a police car arrived and transported him to the precinct where the police charged him with unlawful entry,[2] and subsequently released him.

The chief security investigator for Safeway Stores, Inc., Mr. Kubicek, stated that Safeway did not hire, pay or train the Seaboard guards or tell them specifically how to do their work. He said that there was an oral understanding between Safeway and Seaboard that Seaboard would supply security guards for 16 Safeway stores. Safeway paid for their services in one lump sum to Seaboard. Kubicek explained that a guard was under the general direction of the store manager, who had operational control over the guard. Specifically, he

---

1. Appellant also argues that the trial court erred in not granting an unconditional new trial and in denying Safeway's request for a "missing witness" jury instruction. Finding these arguments unpersuasive, we affirm the trial court's action on these two issues.

2. The criminal charge was subsequently dropped.

said that the store manager would normally set the hours the guards worked, and could ask Seaboard to replace a guard with whom he had become dissatisfied. Kubicek also testified that if a store manager encountered problems with a customer and needed a guard's assistance, the guard would act under the general direction of the manager.

Testifying for appellant, Seaboard security guard Moore contradicted appellee's version in some respects. Moore stated that he noticed Kelly and the assistant manager in the front of the store talking loudly. Contrary to appellee's assertion that the assistant manager motioned to the guard, Moore said he approached the assistant manager on his own initiative in an attempt to resolve an emerging problem. At the same time, Moore stated, Officer Knowles of the Metropolitan Police Department entered the store and came directly over to the assistant manager and Kelly. When Kelly became louder, the police officer decided to place him under arrest. The security guard grabbed Kelly, who then swung at the officer. A scuffle broke out between the guard, the officer and Kelly, resulting in Officer Knowles handcuffing Kelly and placing him under arrest with the assistance of the guard.

Although Moore differed with Kubicek as to the question of who determined a guard's working hours, he generally supported the latter's testimony in other respects. Moore also explained that Seaboard trained the guards placing primary emphasis on apprehension and arrest of shoplifters. He added that he would follow specific requests of the manager, such as locking the doors in the evenings, and would act under the general direction of the manager if he were having a problem with a customer.

Also testifying for appellant, the assistant store manager Wheeler recollected that the police officer first came over to talk to him, and then approached Kelly and told him the assistant manager wanted him to leave the store. Wheeler also said that Kelly threw a punch at the officer before the security guard touched Kelly to assist in the arrest. The store manager denied that he had called Kelly a troublemaker. He explained that, in response to Kelly's boisterous complaints about the broken door, he told Kelly that if he could not "keep it down," Wheeler would call the police to remove him. Wheeler also stated that the only instructions Safeway gave to the guards were to keep juveniles out of the doorway and to watch for shoplifters.

Officer Knowles stated that a short interval after entering the store on routine patrol, he heard loud shouting on the premises. Seeing the assistant manager and Kelly in the front of the store, he approached the assistant manager, who told him that he had asked Kelly to leave but Kelly refused. The officer approached Kelly and informed him that he would have to leave if he would not quiet down. When Kelly continued to shout, Officer Knowles told him he was under arrest. The officer could not tell if Kelly swung at him, but did know Kelly raised his fist or fists. The officer grabbed Kelly around the neck, and pulled him to the ground. Moore then grabbed Kelly and helped the officer handcuff him.

In his suit against Safeway,[3] Kelly alleged assault and battery, and false arrest.[4] The jury entered judgment against Safeway for compensatory damages[5] in the amount of $25,000 for assault and battery, and $40,000 for false arrest. Safeway moved for judgment notwithstanding the verdict (n.o.v.) or alternatively for a remittitur and/or a new trial. On May 7, 1980, the trial judge granted a remittitur, thereby reducing appellee's verdict for assault and battery to $2,000, and for false arrest

3. Originally, appellee also named the District of Columbia as a defendant. Before trial the court dismissed the action against the District due to Kelly's failure to answer interrogatories.

4. Kelly also alleged (1) libel/slander/defamation, (2) malicious prosecution, and (3) negligence. The trial court granted Safeway's motions for directed verdicts on these counts.

5. Kelly also sought punitive damages. At the close of all the evidence the trial court directed a verdict against Kelly on this claim.

to $13,000.[6]  He conditioned denial of Safeway's motion for a new trial on Kelly's acceptance of the remittitur.  Kelly filed a timely acceptance of the remittitur and Safeway appealed the court's ruling.[7]

## II

The threshold determination is whether Safeway is liable for the alleged assault and battery and false arrest of appellee by a security guard who was working at a Safeway store and was employed by an independent security service.  Safeway argues that it avoids liability since the guard service company was an independent contractor [8] and not a servant of Safeway.

Determining whether a master and servant [9] relationship exists depends upon the particular facts of each case.  *McGinniss v. Frederick W. Berens Sales, Inc.*, D.C. App., 308 A.2d 765, 766 (1973); *see* RESTATEMENT (SECOND) OF AGENCY § 220, Comment (c) (1958).  The leading case in our jurisdiction lists the following factors to be considered:

(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer.  Standing alone, none of these *indicia*, excepting (4), seem controlling in the determination as to whether such relationship exists.  The decisive test * * * is whether the employer has the *right to control and direct the servant in the performance of his work and the manner in which the work is to be done.*  [*LeGrand v. Insurance Company of North America*, D.C.App., 241 A.2d 734, 735 (1968) *quoting Dovell v. Arundel Supply Corp.*, 124 U.S.App.D.C. 89, 90, 361 F.2d 543, 544, *cert.* denied, 385 U.S. 841, 87 S.Ct. 93, 17 L.Ed.2d 74 (1966).] [10]

In characterizing the right to control as the determinative factor, we mean the right to control an employee in the performance of a task and in its result, and not the actual exercise of control or supervision.  *Dovell v.*

---

6.  On April 8, 1980, the trial judge had entered an order, granting a new trial or a remittitur, which he vacated and for which he substituted the May 7 order.

7.  Kelly filed a cross-appeal alleging that the trial court erroneously granted appellant's motion for directed verdict on the issues of negligence, malicious prosecution and punitive damages.  Because appellee urges us to consider these issues only in the event that we remand the case for a new trial, our holding precludes us from reaching them.

8.  An independent contractor is defined as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." [RESTATEMENT (SECOND) OF AGENCY § 2(3) (1958).]

9.  The terms "master" and "servant" are defined as follows:

(1) A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

(2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the

right to control by the master. [RESTATEMENT (SECOND) OF AGENCY § 2(1) & (2) (1958).]

10.  Similarly, the American Law Institute distinguishes a servant from an independent contractor as follows:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business. [RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958).]

*Arundel Supply Corp., supra* at 91, 361 F.2d at 545, *see* RESTATEMENT (SECOND) OF AGENCY § 220(1) (1958); F. HARPER & F. JAMES, THE LAW OF TORTS § 26.11 (1956).

In a similar case, we held that a guard employed by an independent security service at a Safeway store was a servant acting within the scope of employment when he assaulted a customer. *Safeway Stores, Inc. v. Gibson*, D.C.Mun.App., 118 A.2d 386, 388 (1955), *aff'd*, 99 U.S.App.D.C. 111, 237 F.2d 592 (1956). However, in that case, this Court did not discuss the distinction between an independent contractor and a servant since Safeway only challenged whether the guard was acting within the scope of his employment, and whether Safeway was liable for punitive damages. *Id.* at 388–89.

A discussion of the factors relevant to determining whether a store's security service is in a master/servant relationship or is an independent contractor appears in *Adams v. F. W. Woolworth Co.*, 257 N.Y.S. 776, 144 Misc. 27 (Sup.Ct.1932). The court held that a detective agency, which was employed to protect the store's property, was a servant and not an independent contractor of the store owner. *Id.* at 781, 144 Misc. at 31. The court found the following factors relevant: the contract was performed at the store; the store could determine which people the guards should investigate; the agency had no specific job or piece of work to perform; the agency rendered continuous service for which the store paid it weekly; and the store could terminate the particular service whenever it chose. *Id.* at 780, 144 Misc. at 30. The court emphasized that no single fact is more conclusive of a master and servant relationship than the unrestricted right of the employer to terminate the employment whenever he chose. *Id.* at 780, 144 Misc. at 30–31.

■ Appellant argues that the trial court should have granted its motion for judgment notwithstanding the verdict (n.o.v.) [11] since Safeway did not have the right to control the manner in which the guard performed his work, thereby making the guard an independent contractor. Analyzing the facts in this case against the *LeGrand* factors, we reach the opposite conclusion. Although Seaboard hired the guards, Safeway had the right to discharge an individual guard, subject to Seaboard's approval. Safeway hired the guards to work on a continuous basis at several of its stores and paid for their services on a monthly basis in a lump sum payment to the agency. Most importantly, Safeway enjoyed the right to control the guards' conduct. As Kubicek testified, the store manager had operational control over the guards, who worked under his general direction. The guard's testimony provided some specific instances of control: on occasion he would lock the doors at the manager's request or would act under the manager's general direction if he were having a problem with a customer. The store manager's testimony added further examples: the manager instructed the guards to keep juveniles out of the doorway and to watch for shoplifters. Finally, Kelly's description of the events at issue in this case revealed that the manager motioned for the guard to come to his assistance after Kelly complained about the doors to the manager. Thus, the record reflects that the Safeway manager identified specific problems requiring the guard's assistance and directed the guard to those problems. These specific instances of actual control are evidence of the general right of Safeway to control the guard in the performance of his duties. Thus, we find there was evidence upon which a reasonable jury could properly have found that the guard was a servant and not an independent contractor of Safeway,[12] and that accordingly,

**11.** A judgment n.o.v. "shall be awarded only when, viewing the evidence and all reasonable inferences in the light most favorable to the party who secured the jury verdict, no juror could reasonably reach a verdict for the opponent of the motion." *Webster v. M. Loeb*

*Corp.*, D.C.App., 400 A.2d 319, 320 (1979); *see Rich v. District of Columbia*, D.C.App., 410 A.2d 528, 532 (1979); *Smith v. District of Columbia*, D.C.App., 399 A.2d 213, 216 (1979).

**12.** Even where the guard agency is an indepen-

Safeway is liable for the guard's allegedly tortious conduct which gave rise to this action.[13]

## III

■ Next we turn to appellant's allegation that the trial court should have granted judgment n.o.v. on the false arrest claim since probable cause existed to arrest appellee for unlawful entry.[14] "In this jurisdiction the gist of a complaint for false arrest or false imprisonment is an unlawful detention." *Jackson v. District of Columbia*, D.C. App., 412 A.2d 948, 954 (1980); *Marshall v. District of Columbia*, D.C.App., 391 A.2d 1374, 1380 (1978). Once shown, the defendant has the burden of establishing probable cause for the arrest. *Clarke v. District of Columbia*, D.C.App., 311 A.2d 508, 511 (1973). To prevail, the arresting officer need not prove probable cause in the constitutional sense, but rather must prove that he had a reasonable good faith belief that the suspect committed the offense. *See Jackson v. District of Columbia, supra* at

954; *Gueory v. District of Columbia*, D.C. App., 408 A.2d 967, 969 (1979); *Woodward v. District of Columbia*, D.C.App., 387 A.2d 726, 727 (1978); *Wade v. District of Columbia*, D.C.App., 310 A.2d 857, 862 (1973) (en banc).[15] We must view the evidence of probable cause from the perspective of the arresting officer and not the plaintiff. *Prieto v. May Department Stores Co.*, D.C. App., 216 A.2d 577, 579 (1966).

■ The issue of probable cause for false arrest is a mixed question of law and fact. *Lansburgh's, Inc. v. Ruffin*, D.C.App., 372 A.2d 561, 564 (1977); *Neisner Brothers, Inc. v. Ramos*, D.C.App., 326 A.2d 239, 240 (1974). Where the facts are in dispute, the issue of probable cause is for the jury, but where the facts are undisputed or clearly established, a question of law arises for the court. *Lansburgh's, Inc. v. Ruffin, supra* at 564–65; *Nichols v. Woodward & Lothrop, Inc.*, D.C.App., 322 A.2d 283, 285 nn.1 & 4 (1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975); *Smith v. Tucker*, D.C.App., 304 A.2d 303, 306 (1973); *Wol-*

dent contractor, the hirer of the agency may still incur liability in certain circumstances. For instance, due to the actions of the Safeway assistant manager in requesting Kelly's arrest, Safeway might have incurred liability if the elements of false arrest had been shown. *See Smith v. District of Columbia, supra* at 218; *Bass v. Dunbar House, Inc.*, D.C.Mun.App., 161 A.2d 50, 51 (1960); RESTATEMENT (SECOND) OF TORTS § 45 A (1965). However, our holding in Part III *infra* that probable cause existed for Kelly's arrest precludes us from reaching this issue.

In addition, courts have held a grocery store liable for the intentional torts committed by their independent contractors based on the store's personal nondelegable duty to protect its property and customers. *Malvo v. J. C. Penney Co., Inc.*, 512 P.2d 575, 583 n.13 (Alaska 1973); *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.*, 542 S.W.2d 882, 890 (Tex.Civ.App. 1976); *see Nash v. Sears, Roebuck & Co.*, 12 Mich.App. 553, 163 N.W.2d 471 (1968), *rev'd on other grounds*, 383 Mich. 136, 174 N.W.2d 818 (1970); *Adams v. F. W. Woolworth Co., supra; Szymanski v. Great Atlantic & Pacific Tea Co.*, 79 Ohio App. 407, 74 N.E.2d 205 (1947); Note, *Independent Contractors—Liability of Employers—Grocery Store is Liable for False Imprisonment by Its Independent Contractor Providing Security Service*, 9 ST. MARY'S L.J. 153 (1977); 38 A.L.R.3d 1332 (1971). *See generally* RESTATEMENT (SECOND) OF TORTS §§ 409–

429 (1965); F. HARRIS & F. JAMES, THE LAW OF TORTS § 26.11 (1956).

13. The mere existence of a master and servant relationship does not impose liability on the master unless the servant is acting within the scope of employment. *Johnson v. Weinberg*, D.C.App., 434 A.2d 404, 408 (1981); *Penn Central Transportation Co. v. Reddick*, D.C.App., 398 A.2d 27, 29 (1979). However, in this case, it is undisputed that the guard was acting within the scope of employment when he assisted the police officer in arresting appellee.

14. D.C.Code 1981, § 22–3102 reads in pertinent part:

Any person who, without lawful authority, shall enter ... any public or private dwelling, building or other property, ... or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor....

15. Under the general arrest statute, a law enforcement officer is privileged to make a warrantless arrest of "a person whom he has probable cause to believe has committed or is committing an offense in his presence." D.C.Code 1981, § 23–581(a)(1)(B).

ter v. Safeway Stores, Inc., 80 U.S.App.D.C. 357, 358, 153 F.2d 641, 642, cert. denied, 329 U.S. 747, 67 S.Ct. 64, 91 L.Ed. 644 (1946). Where the undisputed facts considered in the light most favorable to the appellee establish probable cause, then a directed verdict or judgment n.o.v. is appropriate. Lansburgh's, Inc. v. Ruffin, supra at 565–66; see Prieto v. May Department Stores Co., supra at 578.

■ In this case security guard Moore assisted Officer Knowles in arresting Kelly for unlawful entry.[16] Absent a constitutional or statutory right to remain, a person lawfully on the premises of a commercial establishment is guilty of unlawful entry if he refuses to leave the premises after a demand by the person lawfully in charge. Grogan v. United States, D.C.App., 435 A.2d 1069, 1071 (1981) (individuals protesting abortions declined to leave clinic after ordered to do so); Kelly v. United States, D.C.App., 348 A.2d 884, 886 (1975) (unregistered guest failed to leave after returning to hotel despite warning not to); Feldt v. Marriott Corp., D.C.App., 322 A.2d 913, 915 (1974) (barefoot woman refused manager's request to leave restaurant); Drew v. United States, D.C.App., 292 A.2d 164, 166, cert. denied, 409 U.S. 1062, 93 S.Ct. 569, 34 L.Ed.2d 514 (1972) (man failed to leave restaurant after owner asked him to leave despite previous warning not to return); United States v. Bean, D.C.Sup.Ct., (Cr. No. 50426–70, May 12, 1971) (Greene, C. J.) (man with prior arrest for shoplifting failed to leave store after ordered to do so). See O'Brien v. United States, D.C.App., 444 A.2d 946, 948 (1982).

■ Appellee does not allege any constitutional or statutory basis to remain on the premises against the wishes of the Safeway manager. Rather, he argues that he had a good faith belief in his right to remain since he had not yet completed the business transaction for which Safeway had invited him onto the premises and that the mana-

ger did not specifically ask him to leave. The facts, considered in the light most favorable to appellee, do not support this contention. According to the testimony of Officer Knowles and the assistant manager, the latter told Knowles that he (the manager) wanted Kelly to leave the store and that when Knowles conveyed this information to Kelly, Kelly refused to leave. As appellee himself testified, the manager told him that if he did not leave, the manager would call the police and have him arrested. This testimony renders incredible Kelly's subsequent statement that he did not know the manager wanted him to leave. Thus, the record reflects that it was undisputed that probable cause existed to arrest Kelly for unlawful entry. Accordingly, we reverse the judgment against Safeway for false arrest.

IV

■ Safeway also argues that the trial court should have granted judgment n.o.v. on the assault and battery claim. If the person making a lawful arrest used excessive force, the person arrested may have a claim for assault and battery. Jackson v. District of Columbia, supra at 955; see F. HARPER & F. JAMES, THE LAW OF TORTS § 3.18, at 280–81 (1956). In this case the action of the Seaboard guard may impose liability on Safeway. As we have said:

> [A] master may be liable in compensatory damages where he has confided to his servant duties which in the natural and ordinary course may involve the use of force upon third persons, and he has expressly or impliedly committed to the servant the determination of the particular occasion upon which such force is to be used and the particular degree of force which is to be applied. [Safeway Stores, Inc. v. Gibson, supra at 388.]

■ Appellee alleges that although he offered no resistance, the Seaboard guard grabbed him from behind around the throat

---

16. A special police officer has the same authority to arrest without a warrant as law enforcement officers within their jurisdiction. Lansburgh's, Inc. v. Ruffin, supra at 565 n.10; Ear-

man v. United States, D.C.App., 250 A.2d 918, 919 n.5 (1969); United States v. Dorsey, 146 U.S.App.D.C. 28, 30–31, 449 F.2d 1104, 1106–07 (1971); see D.C.Code 1981, § 23–582(a).

864

and pushed him to the ground before hand-cuffing him. Although witnesses for appellant each told different versions of the events, we find that there was sufficient evidence upon which a jury could properly have found Safeway liable for assault and battery. Accordingly, we affirm the jury finding of liability on that count.

V

Appellant also challenges the trial court's grant of a new trial conditioned on appellee's refusal of the remittitur. A trial court's broad discretion to grant or deny a motion for a new trial based on the excessiveness of the verdict will be reversed only for an abuse of discretion. *Wingfield v. Peoples Drug Store, Inc.,* D.C.App., 379 A.2d 685, 687 (1977); *May Department Stores Co., Inc. v. Devercelli,* D.C.App., 314 A.2d 767, 775 (1973); *City Stores Co. v. Gibson,* D.C.App., 263 A.2d 252–53 (1970); *Munsey v. Safeway Stores, Inc.,* D.C.Mun. App., 65 A.2d 598, 600 (1949). Upon this record we do not find that the trial court's award of a remittitur, or a new trial if appellee refused the remittitur, was so beyond the range of reason as to require reversal.

*Affirmed in part and reversed in part.*