Carla BROWN, as Next Friend of Octavia Brown, Appellant,

v.

ARGENBRIGHT SECURITY, INC., and Safeway Stores, Inc., Appellees.

No. 99–CV–1603.

District of Columbia Court of Appeals.

Argued April 24, 2001.
Decided Oct. 4, 2001.

Gregory L. Lattimer for appellant.

David D. Hudgins, with whom Kevin A. Kernan, Alexandria, VA, was on the brief, for appellee Argenbright Security, Inc.

Stephen M. Schaefer, with whom Jerome C. Schaefer, Washington, DC, was on the brief, for appellee Safeway Stores, Inc.

Before TERRY, RUIZ, and GLICKMAN, Associate Judges.

TERRY, Associate Judge:

This is an appeal from two orders granting summary judgment to appellees Argenbright Security, Inc., and Safeway Stores, Inc. Carla Brown, on behalf of her twelve-year-old daughter Octavia, sued Argenbright and Safeway for negligence, intentional infliction of emotional distress,[1] and negligent infliction of emotional distress. The complaint alleged that Joseph Hunter, a security guard employed by Argenbright, stopped Octavia on suspicion of shoplifting just as she left a Safeway store and, in the course of searching her, touched her in a sexually improper manner. The complaint also alleged that Octavia's picture was taken and posted in the Safeway store to identify her as a shoplifter, causing her emotional distress.

On this appeal, Ms. Brown argues that the trial court erred in ruling that Argenbright and Safeway were not vicariously liable for Hunter's actions as a matter of law, in dismissing the negligence claims against Safeway, and in dismissing her emotional distress claims against both parties based on the alleged posting of her picture on the bulletin board. As to Safeway, we affirm the judgment in its entirety. As to Argenbright, we conclude that the trial court erred when it ruled that Argenbright could not be held vicariously liable for Hunter's actions as a matter of law. Accordingly, we reverse in part the trial court's order granting summary judgment to Argenbright and remand the case for further proceedings.

1. The claim of intentional infliction of emotional distress was dismissed with prejudice at an early stage of the case. That ruling is not challenged on appeal.

2. According to Hunter's deposition, Octavia dropped her jacket outside the store when Hunter approached her. Another girl, one of

**I**

Safeway operates a supermarket on Martin Luther King Avenue in Southeast Washington. Argenbright provides unarmed personnel to work as security guards in that supermarket, pursuant to a contract between Safeway and Argenbright's corporate predecessor.

On October 15, 1997, a Safeway employee informed Joseph Hunter, an Argenbright security guard assigned to the supermarket, that he had seen Octavia Brown and her friends steal some candy from the store. Octavia testified in her deposition that she had just left the store when Hunter asked her to come back inside and "pulled" her into the store's security booth. Hunter then emptied the pockets of her jacket[2] and began to search her, first touching the upper part of her arm and then the upper portion of her chest between her neck and breasts. Octavia described the search as follows:

Q. What was the next thing he did?

A. Then he went down. He came down.

Q. Your front?

A. Yes.

Q. Did he touch your breasts?

A. Yes.

Q. Did he touch your stomach?

A. Yes. . . .

Q. Now, he was standing in front of you, as I understand it?

A. Yes.

Q. Did he touch your back?

Octavia's companions, picked up the jacket and brought it inside, where she gave it to Hunter. He in turn handed it to Tina Addison, a store employee, who searched the pockets and found some candy of the type that Octavia had been accused of stealing.

A.  When he popped my bra strap, he did like that (indicating), and it popped.

Q.  Was he standing in front of you when he did that?

\*    \*    \*    \*    \*    \*

A.  No, he was standing in back of me.

Q.  Okay.... So he's standing in front of you, and after he's touched your stomach, what did he do?

A.  He went down to my knees and between my legs.

Q.  Did he touch your genital area?

A.  Yes.

Q.  Did you have your jeans on at the time?

A.  Yes.

Q.  You didn't remove your clothing?

A.  No.

Q.  Did he go below your knees?

A.  No.

Q.  Then what happened?

A.  Then when I was standing, he walked out and he came back in, and he came behind me, and then he popped my bra strap.

Despite her request that a female security guard conduct the search, Octavia testified that no other Safeway or Argenbright employee was present while Hunter searched her.  After she was searched, a "female security lady" took a Polaroid photograph of her inside the security booth.

Octavia never saw the photograph, but she said she had been teased by friends who later saw her picture posted on the wall of the store.

In his deposition testimony, Hunter admitted questioning Octavia about the stolen candy, but he said he did not search her or touch her in an improper manner. Hunter also stated that he called a female Safeway employee over to the security booth as he was trained to do, and that she was present during the questioning.[3]  He said that he took one photograph of Octavia, but he placed it in the store's files with his report of the incident and did not post it on the wall of the store, as Octavia asserted.

On November 2, 1998, one year and eighteen days after the incident, Carla Brown filed a complaint against both Argenbright and Safeway alleging negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.[4]  She sought $250,000 in compensatory damages and $250,000 in punitive damages on each count.  Both Argenbright and Safeway filed motions for summary judgment, which the trial court granted, holding (1) that Argenbright and Safeway could not be held liable under a theory of *respondeat superior* because, as a matter of law, Hunter was not acting within the scope of his employment when engaging in the alleged improper sexual conduct,[5]  (2) that Ms.

---

3.  That employee, Tina Addison, testified in her deposition that she was present in the security booth during the questioning and that she did not search Octavia or see Mr. Hunter search Octavia.  She saw Hunter take one photograph of Octavia.

4.  Appellant did not include in her complaint any claims alleging intentional torts such as assault, battery, false arrest, or defamation, since they were barred by the one-year statute of limitations.  *See* D.C.Code § 12–301(4) (1995).

5.  The court said in its order:

> It has been held on facts substantially similar to these that as a matter of law the employer cannot be held liable for the acts of a security guard.

For this proposition the court cited *Webb v. Jewel Cos.*, 137 Ill.App.3d 1004, 1007–1008, 92 Ill.Dec. 598, 485 N.E.2d 409, 412–413 (1985), and *Heindel v. Bowery Savings Bank*, 138 A.D.2d 787, 525 N.Y.S.2d 428 (1988).

Brown did not present sufficient evidence supporting her claim that either Argenbright or Safeway was negligent in hiring, supervising, or training Mr. Hunter,[6] and (3) that no jury question was presented on the claim of negligent infliction of emotional distress based on the posting of Octavia's photograph on the wall of the store, since the only evidence of that posting was inadmissible hearsay.

## II

"In reviewing the trial court's summary judgment ruling, it is not the function of this court to resolve factual issues, but rather merely to determine whether any relevant factual issues exist." *Moseley v. Second New St. Paul Baptist Church*, 534 A.2d 346, 348 (D.C.1987) (citation omitted); *accord, e.g., Murphy v. Army Distaff Foundation, Inc.*, 458 A.2d 61, 62 (D.C. 1983); *see* Super. Ct. Civ. R. 56(c) (moving party is entitled to summary judgment if the evidence of record shows "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law"). On the record before us, we hold that summary judgment was properly granted to Safeway, but that issues of material fact remain with respect to Argenbright.

### A. *The Respondeat Superior Claims*

■ "Under the doctrine of *respondeat superior*, an employer may be held liable for the acts of his employees committed within the scope of their employment." *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C.1984) (citation omitted). As a general rule, whether an employee is acting within the scope of his employment is a question of fact for the jury. "It becomes a question of law for the court, however, if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of the employment." *Id.* at 562 (citations omitted). In this case we conclude that summary judgment in favor of Argenbright on the *respondeat superior* issue was unwarranted because, on the evidence presented, a reasonable juror could have concluded that Hunter's actions—as described by Octavia—were, at least in part, within the scope of his employment.

In *Johnson v. Weinberg*, 434 A.2d 404 (D.C.1981) ("*Johnson I*"), we addressed a *respondeat superior* claim brought by a laundromat customer who was shot by a laundromat employee. After the two men had argued over some missing laundry, the employee drew a gun and shot the customer. The trial court directed a verdict in favor of the laundromat's owner, ruling that the employee's action was outside the scope of his employment. We reversed and remanded the case for a new trial, holding that "[r]easonable minds could find that the shooting arose out of and was related to [the employee's] employment ... and the court committed error by taking the question from the jury." *Id.* at 409.

A second trial resulted in a verdict for the customer. The laundromat owner appealed, arguing *inter alia* that the trial court should have directed a verdict in his behalf because the shooting was not within

---

6. The first count of appellant's complaint alleged only simple "negligence," asserting that Argenbright and Safeway had negligently failed to prevent Mr. Hunter from "inappropriately interacting with" Octavia—essentially a claim of negligent supervision. Her response to the summary judgment motions, however, raised claims of *respondeat superior* as to both Argenbright and Safeway. Since these claims were based on conduct amounting to an intentional tort, the court treated the first count as alleging negligence for statute of limitations purposes only. *See Mellon v. Seymoure*, 56 App.D.C. 301, 302, 12 F.2d 836, 837 (1926).

the employee's scope of employment. He maintained that there had been a substantive change in the law resulting from our decision in *Boykin v. District of Columbia, supra*.[7] We held that *Boykin* had not changed the law, and stated:

> The employer does not avoid liability for the employee's intentional torts ... if the tort is committed partially because of a personal motive, such as revenge, as long as "the employee [is] actuated, at least in part, by a desire to serve his principal's interest."

*Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C.1986) ("*Johnson II*") (citations omitted).

■ Applying *Johnson I* and *Johnson II*, we must reject as too broad the statement in the trial court's order that "sexual assaults are, as a matter of law, solely for the employee's benefit." While it is probable that the vast majority of sexual assaults arise from purely personal motives, it is nevertheless possible that an employee's conduct may amount to a sexual assault and still be "actuated, *at least in part*, by a desire to serve [the employer's] interest." *Jordan v. Medley*, 228 U.S.App. D.C. 425, 428, 711 F.2d 211, 214 (1983) (emphasis added) (cited in *Johnson II*, 518

A.2d at 988); *see* RESTATEMENT (SECOND) OF AGENCY § 228 (1958).[8] The conduct at issue in this case, ostensibly a physical search of a suspected shoplifter, is particularly susceptible to this interpretation, especially when the search was initiated by Hunter only after he had reason to believe that his employer's interests had been affected (*i.e.*, that merchandise had been stolen by the person he was about to search). At what point, if ever, Hunter's personal desires motivated his alleged physical contact with Octavia is a factual question that should have been considered by a jury. *See Boykin*, 484 A.2d at 562. Since we must view the evidence presented—in particular, Octavia's deposition testimony—in the light most favorable to appellant, *see Angulo v. Gochnauer*, 772 A.2d 830, 836 n. 9 (D.C.2001), we conclude that a reasonable juror could have found that Hunter's actions were, at least in part, within the scope of his employment. Consequently, summary judgment should not have been granted to Argenbright on the issue of vicarious liability. *See Johnson II*, 518 A.2d at 988–989. Whether Mr. Hunter physically searched Octavia, and whether his conduct, if proven, was motivated to any extent by his desire to serve his em-

7. In *Boykin* we affirmed a grant of summary judgment, ruling that the District of Columbia could not be held liable for a sexual assault on a deaf, blind, and mute child in a school building by the child's instructor, a District employee. We held that the employee had acted outside the scope of his employment because the sexual attack "was not a direct outgrowth of [his] instructions or job assignment, nor was it an integral part of the school's activities, interests or objectives. [The] assault was ... done solely for the accomplishment of [his] independent, malicious, mischievous and selfish purposes." *Boykin*, 484 A.2d at 562. In the case at bar, the trial court relied in part on *Boykin* in concluding that Hunter's conduct was not, as a matter of law, within the scope of his employment.

8. Section 228 of the Restatement reads as follows:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, *at least in part*, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. [Emphasis added.]

ployer or was entirely his own personal adventure, are questions that a jury must answer.

■ As for appellant's *respondeat superior* claim against Safeway, however, we agree with the trial court that summary judgment was appropriate. Since Hunter was not Safeway's employee but was a contracted security guard, Safeway can be held vicariously liable for Hunter's conduct only if the evidence establishes a master-servant relationship between Safeway and Hunter. *See Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 860–861 (D.C.1982). No such relationship was shown on this record.

■ In *Kelly* we held that a store could be held liable for torts committed by a security guard who was employed by a contractor. In determining whether a master-servant relationship exists, we noted that, while no single factor is controlling, "the decisive test ... is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done." *Id.* at 860 (citations omitted). In *Kelly*, there was a full trial before a jury and ample evidence showing that Safeway had the right to control the

security guard's conduct. *See id.* at 860–861. In this case, by contrast, there was no evidence whatever showing that Safeway had such authority over Hunter. The only suggestion to that effect was the statement in an affidavit by the manager of Argenbright that "a security guard's performance and conduct is monitored by Safeway management." Under *Kelly* and other cases, this statement does not demonstrate the kind of control sufficient to establish a master-servant relationship upon which liability may be founded. *See Kelly*, 448 A.2d at 860–861; *see also, e.g., District of Columbia v. Hampton*, 666 A.2d 30, 38–41 (D.C.1995); *Giles v. Shell Oil Corp.*, 487 A.2d 610, 611–613 (D.C. 1985). Since there was no proof of a master-servant relationship, Safeway had no potential liability for Hunter's alleged sexual assault on a theory of *respondeat superior*.[9]

### B. *The Negligent Supervision Claim against Safeway*

■ A related but separate claim is that Safeway was negligent in failing to prevent the harm done to Octavia by Hunter's alleged conduct. Under this "negligent supervision" theory,[10] Safeway's

---

9. We also agree with the trial court that neither Argenbright nor Safeway can be found liable for negligent infliction of emotional distress as a result of Hunter's alleged sexual misconduct. In this jurisdiction, damages for negligent infliction of emotional distress are recoverable only "if the plaintiff was in the zone of physical danger and was caused by [the] defendant's negligence to fear for his or her own safety...." *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C.1990) (en banc). No claim was made below that Octavia ever feared for her physical safety. Moreover, since the conduct alleged, even when viewed in the light most favorable to appellant, is not negligence but an intentional tort, appellant cannot recover damages for negligent infliction of emotional distress based on that conduct. *Id.* at 1069.

10. The Restatement defines negligent supervision as follows:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
(a) in giving improper or ambiguous orders or in failing to make proper regulations; or
(b) in the employment of improper persons or instrumentalities in work involving risk or harm to others;
(c) in the supervision of the activity; or
(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

RESTATEMENT (SECOND) OF AGENCY § 213 (1958).

duty to supervise is "not merely to be judged by the concept of respondeat superior." *Murphy v. Army Distaff Foundation,* 458 A.2d at 63. "Rather, [appellant's claim] is an allegation of direct negligence," asserting that Safeway had a " 'duty [which] extends even to activities which ... [sometimes] are outside the scope of employment.' " *Id.* (citation omitted). "To invoke this theory of liability it is incumbent upon a party to show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Giles v. Shell Oil Corp.,* 487 A.2d at 613.[11]

■ Even though appellant is entitled to all reasonable inferences in her favor, we conclude that the trial court did not err when it determined that "no facts would warrant an inference of negligent supervision" against Safeway. The only evidence arguably supporting the theory that Safeway was negligent in supervising Hunter was that a Safeway employee may have been present at the time of the alleged assault. However, as the trial court pointed out, there was no evidence indicating that this employee had either the power to control Hunter's conduct or the opportunity to alert someone who did have that power in time to prevent the harm. Nor was there any other evidence, as the trial court said in its order, "that a person with supervisory authority over Hunter saw what occurred or [had] an opportunity to stop it." There was thus no basis for an inference of negligent supervision against Safeway, and summary judgment was properly entered in its favor.

### C. *The Photograph*

■ Finally, we sustain the trial court's ruling that summary judgment was warranted on appellant's claim that Argenbright and Safeway were negligent in posting her photograph in the store and that she suffered emotional distress as a result. The only evidence at all on this issue was Octavia's deposition testimony that some of her friends saw the picture posted in the store and teased her about it. Such hearsay evidence is insufficient to create a genuine issue of material fact, and therefore summary judgment was appropriate on this issue. *See Everett v. Nissan Motor Corp.,* 628 A.2d 106, 110 (D.C.1993); *Richardson v. District of Columbia,* 522 A.2d 1295, 1298–1299 (D.C.1987). Appellant contends that these hearsay statements were offered not for their truth, but to show that Octavia suffered emotional distress as a result of the posting of the picture. Be that as it may, appellant offered no other competent evidence that the picture was ever posted in the Safeway store. Without such evidence, her claim must fail.

■ We also agree with the trial court that a claim for negligent infliction of emotional distress cannot be based on the mere taking of the photograph itself. First of all, to recover damages on such a claim, appellant must show that Octavia "was in the zone of physical danger and was caused by defendant's negligence to fear for ... her own safety...." *Williams v. Baker, supra* note 9, 572 A.2d at 1067. The record contains no evidence of any "physical danger," nor can it be assumed that the taking of a photograph, in the circumstances presented here, involves any

---

**11.** Although *Giles* and other cases discuss negligent supervision in the context of an employer-employee relationship and frequently use the term "employee," it is clear from the Restatement and other authorities that a claim of negligent supervision does not require proof that the supervised person was also an employee or agent.

such danger. Furthermore, "[i]n a negligent infliction case, there can be recovery for mental and emotional distress only if the plaintiff's injuries are 'serious and verifiable.'" *Bahura v. S.E.W. Investors,* 754 A.2d 928, 937 (D.C.2000) (citing *Williams* and other cases). No showing was made below of any "serious" or "verifiable" injuries attributable to the taking of the photograph.

### III

We therefore affirm the trial court's grant of summary judgment to Safeway, since Safeway cannot be held liable for Hunter's actions on any interpretation of the facts. However, since Argenbright's potential liability under the doctrine of *respondeat superior* presented a factual issue for the jury on the question of whether Hunter acted within the scope of his employment, we reverse the trial court's grant of summary judgment to Argenbright on that issue only and remand the case for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded for further proceedings.*