**James A. BOND a/k/a Tommie L. Debardlabee, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6496.**

District of Columbia Court of Appeals.

Argued June 20, 1973.

Decided Oct. 2, 1973.

---

14. *See* Harris v. United States, 131 U.S.App.D.C. 105, 108–109, 402 F.2d 656, 659–660 (1968) (Bazelon, C. J. concurring).

Robert M. Silverman, appointed by this court, with whom Michael L. Glaser, Washington, D. C., was on the brief, for appellant.

Regina C. McGranery, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Leonard W. Belter, and Craig M. Bradley, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and PAIR and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

This is an appeal from convictions after a jury trial for violation of D.C.Code 1967, § 22–1506 (three-card monte statute), and § 22–2201 (grand larceny). Appellant was sentenced to five years on the first charge, and five to fifteen years on the second, the sentences to run concurrently.

Appellant's arrest was based on a complaint accusing him and a confederate of engaging in a confidence game, whereby they obtained through trickery the sum of $150 from a young clerical worker, a Mrs. Francine Harper. According to her testimony, she had been induced by a passerby she encountered on Pennsylvania Avenue during her luncheon hour to befriend another stranger (the appellant), described as a confused man with a foreign accent, who was asking for directions to a particular church. He had a large amount of money on his person, which the first man—who

pretended not to know him—advised him for safety reasons to deposit in a bank. As appellant professed a vast distrust of banks, the first stranger persuaded her to demonstrate the trustworthiness of such institutions by withdrawing $150 from her own checking account and placing it in a paper packet into which the supposed foreign stranger also inserted his bankroll.

Agreeing to hold the packet which contained the money of both until the stranger could retrieve some other cash he had left behind and come back to the bank to deposit it, she placed the packet in her handbag. After the two men left her, she returned to her office and discovered that she was the victim of a sleight of hand maneuver, for there was nothing in her handbag but some worthless paper. She told her employer what had happened and they reported the matter to the police.

Later that same week, she was asked to come to a police station by a detective sergeant, Robert A. Eldridge, Jr., who then showed her a number of photographs of individuals from the police files. She identified one of them as a photograph of appellant.

Five days later when she and Sergeant Eldridge were entering a building of the Superior Court to seek a warrant for appellant's arrest, she saw appellant and his confederate in the corridor and pointed them out to that officer. She again identified appellant at trial.

Sergeant Eldridge testified that after appellant and his companion had been pointed out to him by Mrs. Harper, he took her to the office of an Assistant United States Attorney for her protection, went back to the corridor to arrest the pair, but was unable to find them. After looking in vain for them in other buildings around Judiciary Square, he proceeded without a warrant to the motel where appellant was re-

ported to be staying and arrested him and his companion as they were packing to leave the city. At the time of the arrest, Sergeant Eldridge seized certain materials from the partially packed suitcase, including "play money." and other paper he described as paraphernalia carried by professional confidence men.

Appellant did not testify. At the close of all the evidence, however, he addressed the court at some length. He adverted to some arrangement he had supposedly made with another attorney to represent him, although the latter was not present at trial. He attacked the competency of the court-appointed attorney who had represented him, raising a number of factual and legal points which he asserted counsel had failed to explore. After fully hearing him out, the trial court ruled that he was receiving effective assistance from his assigned counsel and that the trial would continue.

■ Appellant first contends that his warrantless arrest was illegal, as he was originally charged only with violation of D.C.Code 1967, § 22–1506, a misdemeanor, albeit an indictable one, the grand larceny charge having been added after the arrest. Appellant notes that while an arrest may be made without a warrant, if the officer has probable cause to believe a felony has been committed, this does not apply to misdemeanors (D.C.Code 1972 Supp., § 23–581) not committed in his presence, except for certain offenses specified in subsection (a)(2).

The factual predicate for this contention is based on a document in the pretrial record signed by an Assistant United States Attorney.[1] It does not appear, however, that Sergeant Eldridge had only the misdemeanor charge in mind when he took the two suspects into custody, for he testified before the grand jury that he arrested them for "grand larceny by trick." He also explained that had he gone back to the

1. This document is a form captioned "No Paper and Change of Charge Slip." Appellant's brief also refers to a postconviction affidavit of appellant which is not part of the record.

courthouse for a warrant after he was unable to find them in the vicinity, his visit to their motel room would have been fruitless as he correctly inferred that they had decided to pack up and leave the jurisdiction. He recalled that when he apprehended them, a New York car was already waiting to pick them up.[2]

Inasmuch as the offense of grand larceny is a felony, and as Eldridge was aware from the complainant's account of the incident that the money taken from her exceeded $100, we deem the warrantless arrest proper under the circumstances. Whether or not Sergeant Eldridge verbally characterized the particular crime for which he made his arrest at the time is immaterial. United States v. Hobby, D.C. App., 275 A.2d 235, 237 (1971). As the United States Court of Appeals for this circuit put it in Bell v. United States, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86 (1958):

. . . this description given by the officer does not go to the question of probable cause. The question is not what name the officer attached to his action; it is whether, in the situation in which he found himself, he had reasonable ground to believe a felony had been committed . . ..

Certainly time was of the essence in the situation with which the police sergeant was confronted, and it is well settled in this jurisdiction that a warrantless arrest effectuated by unconsented entry is justified, where there is probable cause to think a suspected felon is about to flee. Dorman v. United States, 140 U.S.App.D. C. 313, 435 F.2d 385 (reargued en banc) (1970).

In view of our holding on this point, it follows that there was no error in the reception of testimony by the arresting officer concerning the nature of the articles validly seized as an incident to proper arrest. In any event, no objection was made to this testimony while these materials were being marked for identification as proposed exhibits, and any conceivable prejudice was cured by a subsequent rejection of these exhibits as irrelevant, in the absence of a showing that such items were actually used in this particular incident. Even a ruling allowing admission would not have been error. Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961).

Appellant next invokes the "poisonous tree" doctrine, contending that prior to the arrest in this case, he was falsely arrested on the pretext of a traffic violation, his own car subjected to an illegal inventory search, and that the police focused their investigation on him in following up complainant's story as a result of a photograph improperly obtained before releasing his automobile.

Even assuming the illegality of the prior arrest,[3] we regard his position as untenable. In the first place, he points to no particular "fruit" of this alleged "poisonous tree" which was introduced into evidence against him. This doctrine does not operate so broadly as to bar all subsequent prosecutions. Rather it operates on particular evidence, either tangible or testimoni-

2. There is nothing in the transcript of the trial which indicates whether the officer contemporaneously specified to appellant and his friend the crime for which they were being arrested. This court's only knowledge of the officer's reasons comes from an excerpt of the grand jury testimony, certified by appellant as part of the record on appeal.

3. There is no basis in this record for more than an assumption. The only information we have about the prior arrest is appellant's fragmentary and unsworn statements to the court and some sketchy references in Sergeant Eldridge's testimony to the grand jury, which was not available to the trial court. Appellant's references to his affidavit in support of his § 23–110 motion are of no avail, for that motion is not part of the record before us on this appeal.

al, and, if properly invoked, causes the exclusion only of such evidence. *See* Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963). Here, it would seem that appellant would have us hold that he himself is the "fruit" and accordingly he should have been excluded but "[w]e have ruled on more than one occasion that a court will not inquire into the manner in which an accused is brought before it, and that the legality or illegality of an arrest is material only on the question of suppressing evidence obtained by the arrest." District of Columbia v. Jordan, D. C.App., 232 A.2d 298, 299 (1967) (footnote omitted).

Furthermore, assuming there was some actual "fruit" sought to be suppressed, we regard the connection between the fruits of the assertedly unlawful arrest and the evidence presented at the trial under review as so tenuous that any taint was dissipated. As the Supreme Court said in Wong Sun v. United States, *supra,* 371 U.S. at 487–488, 83 S.Ct. at 417:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

■ Contrary to appellant's theory, the record does not show that the first arrest caused the police to concentrate attention upon him when trying to find the culprit in this case. Rather, it appears that appellant's photograph was transmitted to Sergeant Eldridge and placed in a file of suspected confidence men in accordance with normal practice. Later, the complaining witness, not connected with the police, picked appellant's picture from a "multitude" of photographs shown her. It was only then that Sergeant Eldridge secured

appellant's records from the FBI, endeavored to find out where he was staying, and ultimately arrested him. That is not exploitation, but happenstance. The Supreme Court of California has reached the same conclusion against a factual background virtually identical in relevant respects, except in that case the first arrest previously had been judicially determined to be illegal, whereas we have merely assumed its illegality. People v. McInnis, 6 Cal.3d 821, 100 Cal.Rptr. 618, 494 P.2d 690, cert. denied, 409 U.S. 1061, 93 S.Ct. 562, 34 L.Ed. 2d 513 (1972).

■ We also find no error in the trial court's refusal to grant appellant an evidentiary hearing on his motion to develop evidence with respect to his allegations concerning a prior commitment of another lawyer to represent him. It was not until the government had rested, and appointed defense counsel had stated that he was not calling appellant or any other witness to the stand, that appellant voiced any objection to the kind of representation he had had in the proceedings. In our view, an observation made by this court in a recent opinion, McKoy v. United States, D.C.App., 263 A. 2d 645, 648 (1970), sustains the court's disposition of the matter—

> When faced with a request for a change of counsel, either retained or appointed, the court must consider the merits of the defendant's complaints, the delay between the cause of the dissatisfaction and the request, the nearness to trial or completion thereof, and the general dictates of fairness and justice both for the defendant and the Government. . . . The performance of counsel should also be evaluated. . . . We believe that under the facts and circumstances of this case, especially in view of the nearness to conclusion of the trial and the demonstrable effectiveness of appellant's counsel at trial, the court did not abuse its discretion in refusing to dismiss counsel. [Citations omitted.]

■ Appellant's objection to the five to fifteen year sentence on the grand larceny conviction is well-founded. This sentence,

in excess of the statutory maximum, pursuant to D.C.Code 1972 Supp., § 22–104a, was imposed on the basis of an information filed by the United States Attorney citing two previous felony convictions. The government at argument conceded that the enhanced sentence cannot stand, as the information was not filed with the Clerk of the Court prior to trial as required by D.C.Code 1972 Supp., § 23–111. Consequently this case will be remanded for resentencing on the grand larceny count, such new sentence not to exceed the statutory maximum of ten years.

One final point requires our attention. We have recently construed D.C. Code 1967, § 22–1506, as not applying to the type of conduct proved here. See United States v. Brown, D.C.App., 309 A. 2d 256 (1973). It follows that the conviction on this count must be vacated, and we remand for that purpose, as well as for resentencing on the other count. In all other respects, the judgment of the trial court is affirmed.

Affirmed in part, and remanded for further proceedings consistent with this opinion.