McKinley TILLMAN, Appellant,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al., Appellees.

No. 96–CV–173.

District of Columbia Court of Appeals.

Argued Feb. 27, 1997.
Decided April 16, 1997.\*

Carolyn Elefant, for appellant.

Gerard J. Stief, Springfield, VA, with whom Robert L. Polk, and Robert J. Kniaz were on the brief, for appellees.

---

\* The disposition in this case was issued as a Memorandum Opinion and Judgment on April 16, 1997, and is being published upon the court's grant of appellees' motion to publish.

Before FERREN, STEADMAN, and KING, Associate Judges.

FERREN, Associate Judge:

McKinley Tillman appeals from the trial court's dismissal of his claims against Steven McVay and Philip M. Husoveck, two Washington Metropolitan Area Transit Authority (WMATA) police officers who arrested him for fare-avoidance on June 7, 1993. Tillman argues on appeal that the trial court improperly directed a verdict for the defendant officers at the close of the Tillman's case. Specifically, Tillman contends the trial court erred in concluding that: (1) the officers had probable cause in the objective, constitutional sense and therefore possessed a complete defense to Tillman's false arrest claim; and (2) Tillman's negligence and excessive force claims failed because Tillman failed to establish any standard of care from which the officers deviated. We agree with the trial court and affirm.[1]

### I.

The facts, as presented in Tillman's own testimony at trial,[2] are as follows: On June 7, 1993, after running some errands during lunch, Tillman took the elevator into the Gallery Place Metro Station. The gate that normally separates the entryway from the paid area of the station was not in place, and Tillman walked past the farecard machines into the paid area. On his way in, Tillman noticed two individuals, dressed like tourists, whom he later identified as Officers McVay and Husoveck. When Tillman reached the escalators to the train platforms, and noticed the presence of a machine that issues bus transfers, he realized that he inadvertently had walked past the farecard machines. He turned around, farecard in hand, and walked back toward the farecard machines.

When he was approximately six feet away from the farecard machines, the two individuals he had noticed upon entering approached him, identifying themselves as officers with the Metro police, and stating that they had observed Tillman enter the paid area of the station without inserting his farecard. Tillman then put his farecard into the machine, and the officers told him that if he provided some identification they would let him go. Tillman refused, however, and became irritated, speaking in a loud voice. The officers then arrested Tillman and placed him in handcuffs. Tillman complained that the handcuffs were too tight, and the officers responded that the more he struggled, the tighter they would get.[3]

### II.

Tillman proceeded at trial on several, interrelated theories: (1) common law false arrest; (2) negligence and excessive force in the handcuffing; and (3) pursuant to 42 U.S.C. § 1983 (1994), a violation of Tillman's constitutional rights. At the close of Tillman's case,[4] the trial court concluded that the officers had probable cause to arrest, in the objective constitutional sense, and therefore were entitled to a directed verdict on the false arrest claim and the aspect of the § 1983 claim relating to Tillman's arrest. The court also concluded that Tillman had failed to establish a standard of care applicable to the officers' conduct in handcuffing him; the court, therefore, awarded the officers a directed verdict on the negligence and excessive force claims, and on the excessive force aspect of the § 1983 claim.

1. Appellees contend that all counts against WMATA were dismissed before trial, and that we should therefore dismiss WMATA as an appellee. The record does not conclusively resolve the question. In light of our ruling affirming the trial court's order dismissing all counts, however, the point is moot.

2. We, of course, must accept Tillman's testimony as true for purposes of determining whether the trial court properly granted judgment for appellees as a matter of law.

3. In addition to Tillman, the only other witness for the plaintiff was Tillman's treating physician, who testified concerning injuries to Tillman's wrists allegedly related to his handcuffing. The physician's testimony bears no relevance to the issues on appeal.

4. For scheduling reasons, the defense actually presented the testimony of one witness relating to damages before the trial court decided the defense's motion for a directed verdict. Both parties agreed that this accommodation would not affect the defense's opportunity to bring a motion for a directed verdict.

## A.

▇▇ Our case law makes clear that "if a police officer has so-called constitutional probable cause to arrest, determined by reference to the objective standard used to determine probable cause in a criminal proceeding, the arrest will be lawful and the officer accordingly will have a complete defense to a false arrest claim." · *District of Columbia v. Murphy*, 635 A.2d 929, 931–32 (D.C.1993) (citation omitted). Where the facts are undisputed—and in this case the facts are undisputed because we take them in the light most favorable to Tillman—the question of probable cause is a legal one to be determined by the court. *See Welch v. District of Columbia*, 578 A.2d 175, 176 (D.C. 1990).

▇▇ The statutory provision under which Tillman was arrested, D.C.Code § 44–224 (1990 Repl.), provides: "No person shall ... knowingly enter or leave the paid area of a real transit station owned and/or operated by the Washington Metropolitan Area Transit Authority ... without paying the established fare...." Tillman does not dispute that he was improperly in the paid area of the Metro station, beyond the farecard machines where he should have inserted his farecard. He argues, rather, that the officers had no reason to believe that he was "knowingly" in the paid area, and therefore did not have probable cause to arrest him for violating the statute. We cannot agree. The officers reasonably could have inferred from Tillman's undisputed conduct that he had the intent required for a § 44–224 violation. *See, e.g., McBride v. United States*, 393 A.2d 123, 131 (D.C.1978) (noting in obstruction of justice case that intent may be "inferred from the context and nature of the alleged criminal conduct").

We think it would be an unusual case where the circumstances, while undoubtedly proving an unlawful act, nonetheless demonstrated so clearly that the suspect lacked the required intent that the police would not even have probable cause for an arrest. *See Wampler v. Snyder*, 62 App.D.C. 215, 216–17, 66 F.2d 195, 196–97 (1933) (per curiam) (concluding that efforts of individual accused of filing false tax return to introduce evidence of his good faith were irrelevant to probable cause determination, since "[d]isputed questions of fact, especially where they involve the question of intent, as in this case, should never be considered on the question of probable cause"). In this case, we do not believe that Tillman's conduct in turning around upon reaching the escalators and then walking back toward the farecard machines defeats, as a matter of law, the ordinary and reasonable inference that people know what they are doing when they act. *See, e.g., Stebbins v. WMATA*, 495 A.2d 741, 742–43 (D.C.1985) (per curiam) (affirming dismissal of false arrest and malicious prosecution claims, and finding probable cause as a matter of law, where officers observed Stebbins entering bus at rear and Stebbins ·failed to present transfer ticket to driver while the bus travelled two blocks before arrest); *Scott v. United States*, 147 A.2d 767, 767–68 (D.C.Mun.App.1959) (concluding that officer had probable cause to arrest Scott for entering building with intent to steal based on officer's information that Scott had stolen someone's purse inside building).

In a case similar to this one, *Prieto v. May Dep't Stores Co.*, 216 A.2d 577 (D.C.1966), we affirmed dismissal of a false imprisonment claim, where the plaintiff was stopped by a store detective who had observed her placing a pair of pajamas for sale over her sweater and heading toward the exit. *See id.* at 578. When the detective approached Prieto, she told him that she had forgotten that the pajamas were on her arm, and that if she had wanted to steal them, she would have put them in her purse. *See id.* We concluded that these facts established probable cause, and that although Prieto may have been "entirely innocent" and simply forgotten she was carrying the pajamas, "the action of the detective must be viewed from what he observed and not from what may have been in the mind of the plaintiff." *Id.* at 579. This reasoning underscores that, although Tillman's failure to pay the fare may have been an inadvertent product of his confusion concerning the absence of the usual gate, the officers nonetheless had probable cause to arrest him for failing to pay the required fare. The trial court therefore properly

granted a directed verdict to the officers on the false arrest claim.[5]

## B.

■ We also agree with the trial court that Tillman failed to establish any claim of excessive force or negligence in relation to the officers' handcuffing of Tillman. The only testimony remotely suggesting that the officers acted unlawfully was Tillman's assertion that he had complained the handcuffs were too tight and that the officers responded by saying that the more he struggled, the more they would tighten. Tillman offered no evidence of police department regulations governing the use of handcuffs, and no expert testimony demonstrating in any fashion that the officers conduct had been so excessive that it amounted to a common law tort and/or a violation of § 1983. A jury would have to engage in considerable speculation to find for Tillman on this claim without any evidence of the applicable standards.

■ We do not believe that jurors are so familiar with the appropriate level of tightness of handcuffs and with the appropriate response of police officers to complaints by arrested individuals concerning the tightness of handcuffs, that the jury here reasonably could find for the plaintiff in the absence of expert testimony or of similar evidence establishing the standard of care. "[A] plaintiff is required to put on expert testimony where the subject presented is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson.'" *Toy v. District of Columbia,* 549 A.2d 1, 6 (D.C.1988) (quoting *District of Columbia v. Peters,* 527 A.2d 1269, 1273 (D.C.1987)); *accord Etheredge v. District of Columbia,* 635 A.2d 908, 917–918 (D.C.1993) (noting that expert testimony is required in negligent use of force and negligent training case).[6]

\*    \*    \*

Accordingly, the judgment appealed from is affirmed.

*So ordered.*

---

5. It follows from this analysis that the trial court properly dismissed Tillman's § 1983 claim alleging that the arrest was unconstitutional.

6. Tillman's statutory claim of excessive force, D.C.Code § 4–176 (1994 Repl.), and his related § 1983 also must fail since there is no testimony from which a jury could find the force applied by the officers was excessive or unreasonable.