Michael ENDERS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 07–CV–650.

District of Columbia Court of Appeals.

Submitted Nov. 17, 2009.

Decided Sept. 16, 2010.

Michael Enders, pro se.

Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Holly M. Johnson, Assistant Attorney General, were on the brief for appellee.

Before GLICKMAN and FISHER, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

Michael Enders sued the District of Columbia for false arrest following a traffic incident. He appeals from a jury verdict in the District's favor. He asserts, *inter alia*, that the trial court's instructions misled the jury into believing the arrest could be justified on a lesser showing than was actually required. Specifically, he challenges the instruction that a warrantless arrest is justified if a law enforcement officer has probable cause to believe that "a crime" has been or is about to be committed. In fact, he argues, citing D.C.Code § 23–581 (2001), that an officer may lawfully arrest without a warrant only for a felony or for a misdemeanor committed either in the officer's presence or under certain other, limited, circumstances.

The District does not squarely address this or any of Enders' other arguments, but instead asserts that we should affirm the judgment on the basis of two alternative grounds. First, the District argues

that Enders did not comply with the mandatory pre-litigation notice requirement of D.C.Code § 12–309. Second, the District argues that on this record, as a matter of law, the officers had probable cause to arrest for the felony of malicious destruction of property exceeding $200. We take the case as it is thus presented to us. Because we agree with Enders that the trial court's jury instructions were prejudicially in error and because we are not persuaded by either of the District's proposed alternative grounds for affirmance, we vacate the judgment in the District's favor and remand the case for a new trial.

## I. The Incident and Arrest

The arrest came as a result of an impact between Enders' car and a car driven by Kathleen Cravedi. Both parties testified as to their versions of the incident, and the jury was made to understand that these versions, to the extent they differed from each other, were recounted to the police officers who arrived later at the scene.[1] Enders, who represented himself at trial as he does on appeal, testified that he saw Cravedi sitting in a car that he believed was parked too far from the curb, near the intersection of Forty–Fourth and Jenifer Streets, Northwest. He pulled up next to Cravedi's car—which was facing the opposite direction from his—rolled down his window, and asked her why she was parked so far into the street. Cravedi dismissed him, returning to a conversation on her cell phone. Enders made a U-turn and pulled his car behind Cravedi's, testifying he was planning to honk his horn from that position to indicate how far she had parked from the curb. He testified that he pulled up too close to Cravedi's car

and inadvertently "tapped" her bumper, as one would if one were parallel parking. Embarrassed, and feeling as though he no longer had a right to chastise Cravedi about her parking, Enders pulled away, turned his car around, and drove home, which was on nearby Harrison Street. As he was walking to his door, Officer Sylvania Davis approached him, asked him if he had been involved in a collision on Forty–Fourth Street, and, when he said he had, asked him if he would accompany Officer Davis back to the scene.

Cravedi testified that when Enders asked her why she was parked so far from the curb, she thought it was strange because she was, in her opinion, right next to the curb. When she went back to her cell phone conversation, she noticed Enders turn around and begin to head towards her car from behind. She "started to get scared," thinking, "he's going to hit me." Then, she felt her car being hit with a force that caused her to drop her cell phone. She described the hit as "a big bang," and said it "was not a tap." Once she had been hit, she ran to Officer Davis' nearby police cruiser and told her what had happened. Officer Davis then departed and returned a few minutes later with Enders.

After Enders returned to the scene, several other officers arrived, and after an hour of discussion among the officers and the two motorists, Enders was placed under arrest. Enders was told he was being charged with assault with a deadly or dangerous weapon (ADW); namely, his car.[2] He also received a notice of infraction charging him with fleeing the scene of an

---

1. Cravedi explicitly testified that she told the officers "about exactly what happened as I just told you." Enders also testified that he talked to an officer "about what had happened."

2. D.C.Code § 22–402 (2001).

accident after causing personal injury or substantial property damage.[3]

No police officer who remembered anything about the incident testified at trial.[4] A police report, filed the same day as the accident, identified the location of the arrest, the charges, and the circumstances underlying the arrest. Accompanying the police report was an affidavit written by Officer Davis, and an accident report, providing more details of the event. These written documents generally set forth the version of events as recounted by Cravedi. However, they were almost completely silent concerning a major difference in the testimony of the two parties relating to the question of visible damage to Cravedi's car, both as to cause and as to extent, as will be further discussed *infra* in Part III. B.

## II. The Jury Instructions

We first address Enders' argument that the jury instructions were erroneous. Throughout the trial, he pressed the trial court to give an instruction that limited justified warrantless arrests to felonies and misdemeanors committed in an officer's presence. The trial court disagreed with this view of the law. On the contrary, the trial court repeatedly emphasized that as long as the District could show that the officers had probable cause to believe that a "crime," including simple assault and misdemeanor destruction of property, had been committed, the arrest was legally justified and the District was not liable. Accordingly, in the final instructions to the jury, the trial court included language taken from, and substantially identical to, the Standardized Civil Jury Instructions for the District of Columbia § 18.03 (2002 rev. ed):

The issue for you to determine is whether the arrest was legally justified. For an arrest without a warrant[,] there are a couple of ways the defendant may prove the arrest was legally justified. One way the defendant may prove the arrest was legally justified is to show that the officer had probable cause. An officer has probable cause to arrest if he or she has reason to believe that a crime has been or is about to be committed. Thus, in this case if you find that the officer had reason to believe and did believe that the plaintiff had committed a crime then the officer had probable cause to arrest the plaintiff.... If the officer was legally justified in making the arrest then defendant is not liable for false arrest.

In further emphasis of the point that any "crime" would suffice, the trial court continued the instruction: "If you find that the police had probable cause to arrest plaintiff for destruction of property, simple assault, assault with a dangerous weapon, car, or fleeing from the scene then defendant is not liable for false arrest." The trial court then instructed the jury on the elements of each of these four offenses, generally following the standard criminal instructions, but, significantly for present purposes, making no mention of any dollar amount for malicious destruction of property or distinguishing between a misdemeanor or felony violation of that statute.

Of these listed crimes, the only felonies are assault with a dangerous weapon and malicious destruction of property if the damage exceeded $200.[5] Otherwise, the

---

**3.** D.C.Code § 50–2201.05 (2001).

**4.** The sole officer who testified simply confirmed the authenticity of the several police exhibits, and stated he had no independent memory of the incident.

**5.** D.C.Code § 22–303 (2001).

offenses are all misdemeanors.[6] Thus, if appellant was correct in his view of the law, as we conclude he was, the instruction was demonstrably erroneous and prejudicial.[7]

 In evaluating Enders' claim, it is instructive to examine the tort of false arrest and its defenses at common law. "False arrest" is indistinguishable as a practical matter from the common law tort of "false imprisonment." *Dent v. May Dep't Stores Co.*, 459 A.2d 1042, 1044 n. 2 (D.C.1982); *see also Great Atlantic & Pacific Tea Co. v. Paul*, 256 Md. 643, 261 A.2d 731, 738 (1970) (noting that the two are "torts that apparently differ only in terminology"). The gravamen of a complaint for false arrest or false imprisonment is an unlawful detention. *See Clarke v. District of Columbia*, 311 A.2d 508, 511 (D.C.1973); 32 AM.JUR.2D *False Imprisonment* § 7 (2007) ("[t]he essential elements of false imprisonment are: (1) the detention or restraint of one against his or her will, and (2) the unlawfulness of the detention or restraint"). Therefore, "[i]n actions for false arrest and false imprisonment, the central issue is 'whether the arresting officer was justified in ordering the arrest of the plaintiff. . . .' " (*Sharon*) *Scott v. District of Columbia*, 493 A.2d 319, 321 (D.C.1985) (citation omitted); *see also* 32 AM.JUR.2D, *supra*, § 24 ("the critical question is whether the arrest was made in

conformance to the rules governing the validity of an arrest").

At common law, as at present, an important distinction existed between the justification for effecting an arrest with a valid warrant and the justification for effecting an arrest without a valid warrant. An arrest made "pursuant to legal authority," such as "a warrant properly issued and facially valid and fair," provides no basis for an action for false arrest. STUART M. SPEISER, CHARLES F. KRAUSE & ALFRED W. GANS, 7 AMERICAN LAW OF TORTS § 27:15 (1990); *see also Woodward v. District of Columbia*, 387 A.2d 726, 728 (D.C.1978) (where arrest warrant was invalid and officers could not have reasonably believed in validity of warrant, arrest "lacked probable cause," and directed verdict in District's favor could not stand). An officer at common law was only privileged to effect a warrantless arrest if the offense that served as the basis for the arrest was a felony or an offense that involved a breach of the peace. RESTATEMENT (SECOND) OF TORTS, § 121 cmt. e (1965) ("a peace officer has at common law no greater privilege to arrest without a warrant than has a private person. A private person is privileged to arrest another who in his presence is committing a breach of the peace or an attempt to commit a felony, but is not privileged so to arrest for any other misdemeanor although committed in his presence"); *see also* 32 AM.JUR.2D, *supra*, § 72 (no liability for warrantless arrest

---

6. *See, e.g.,* D.C.Code § 22–404(a)(1) (2001) (simple assault).

7. This conclusion is in no way altered by the fact that in the final instruction the trial court also included a reference to the limiting provisions in D.C.Code § 23–581(a)(1). The reference did not state that (as we conclude) a warrantless arrest made in violation of the statute lacks legal justification by definition. Further, the impact of the reference was effectively negated by the subsequent instructions quoted above. Indeed, when Enders

attempted in closing to mention the "in the presence" provision, the trial court cut him off, stated that the language was included merely to explain an argument of Enders' that the arrest was contrived, and reemphasized the provision of its instructions quoted above. As mentioned, the District makes no real attempt to defend the trial court's position, merely pointing out what it sees as two differing lines of cases in our jurisprudence, as discussed *infra*.

where officer has probable cause to believe a felony has been committed); SPEISER ET AL., *supra*, § 27:16, at 1005 ("an officer's authority to make warrantless misdemeanor arrests was limited, however, to offenses involving breach of the peace committed in his presence"). "Such limitation was consistent with the general hostility towards state action untempered by judicial review of applications for warrants." SPEISER ET AL., *supra*, at 1005. See also the exhaustive and nuanced examination of the common law on this issue in *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001).

The authority of officers to effect warrantless arrests for offenses other than felonies or breaches of the peace was subsequently expanded to varying degrees by individual state statutes. RESTATEMENT, *supra*, § 121 cmt. e ("in many states peace officers are given by statute a broader privilege to arrest than is given by common law"); SPEISER ET AL., *supra*, at 1005 ("many states statutorily extended warrantless arrest authority to include any misdemeanor committed or attempted in the officer's presence"); 7 AM.JUR.2D, *supra*, § 43 (no liability for warrantless arrest where officer has probable cause to believe a misdemeanor was committed in officer's presence). "The rationale underlying the in-presence requirement [for misdemeanors] is that in view of the less serious nature of the offense, the probable-cause determination should be left to a magistrate...." *Id.*

Our jurisprudence has reflected this traditional approach. We have stated that

where, as here, the plaintiff in a false arrest case shows he was arrested without a warrant, a presumption arises that the arrest was unlawful, and the burden shifts to the government to justify the arrest. *Karriem v. District of Columbia*, 717 A.2d 317, 320 (D.C.1998); *Clarke*, 311 A.2d at 511. The operative statutory provision defining the extent to which the District has expanded officers' authority to arrest without a warrant, D.C.Code § 23–581(a)(1),[8] now reads as follows:

(a)(1) A law enforcement officer may arrest, without a warrant having previously been issued therefor—

(A) a person who he has probable cause to believe has committed or is committing a felony;

(B) a person who he has probable cause to believe has committed or is committing an offense in his presence;

(C) a person who he has probable cause to believe has committed or is about to commit any offense listed in paragraph (2) and, unless immediately arrested, may not be apprehended, may cause injury to others, or may tamper with, dispose of, or destroy evidence; and

(D) a person whom he has probable cause to believe has committed any offense which is listed in paragraph (3) of this section, if the officer has reasonable grounds to believe that, unless the person is immediately arrested, reliable evidence of alcohol or drug use may become unavailable or the person may cause personal injury or property damage.[9]

---

8. We have referred to this statute as "a codification of the common law of arrest," *Schram v. District of Columbia*, 485 A.2d 623, 624 (D.C.1984), although it has been somewhat expanded over the years by amendments.

9. No contention is made that the officers could have arrested Enders based on authori-

ty from § 23–581(a)(1)(C) or (a)(1)(D), which cross-reference a series of offenses listed in § 23–581(a)(2) and (a)(3). No evidence was presented at trial that the officers had any reason to suspect Enders would flee, destroy evidence, or cause personal injury or property damage if not immediately arrested, as re-

Reflecting the statutory provision and the common law, this jurisdiction has long observed that a warrantless arrest for a misdemeanor not committed in an officer's presence is, absent an exception, contrary to law. *District of Columbia v. Tulin,* 994 A.2d 788, 796 (D.C.2010); *Schram, supra* note 8, 485 A.2d at 624; *Bond v. United States,* 310 A.2d 221, 223–24 (D.C.1973); *District of Columbia v. Perry,* 215 A.2d 845, 847 (D.C.1966); *Craig v. Cox,* 171 A.2d 259, 261 (D.C.1961); *(Gerry) Scott v. District of Columbia,* 322 U.S.App.D.C. 75, 81, 101 F.3d 748, 754 (1996) (Rogers, J.); *Maghan v. Jerome,* 67 App.D.C. 9, 10, 88 F.2d 1001, 1002 (1937).

As far back as *Maghan,* for example, a woman brought a false arrest claim based on her arrest on suspicion that she stole a pocketbook, not in the presence of any officers, whose contents were worth "about $30.00." 67 App.D.C. at 9, 88 F.2d at 1001. At that time, the felony of grand larceny was defined as the taking and carrying away of property of a value in excess of $35. *Id.* at 10, 88 F.2d at 1002. Taking property valued at less than $35 constituted only petit larceny, a misdemeanor. *Id.* The circuit court observed, "the rule is settled that an officer may not arrest for a misdemeanor without a warrant unless it is committed in his presence or within his view." *Id.* The court further stated, "From this, it follows that the police officers can justify the arrest only by a showing that they had reasonable cause to believe that a felony had been committed." *Id.* Because the court held the officers did have probable cause of the felony of grand larceny, the judgment for the plaintiff was reversed. *Id.; see also Tulin,* 994 A.2d at 796 (observing, in case where jury had found in District's favor on false arrest,

that officers' arrest for misdemeanor reckless driving was only lawful because another officer was present when accident occurred); *Craig,* 171 A.2d at 261 (directing a judgment against officer for false arrest at National Airport where arrest could not be justified by plaintiff's parking violation: statute authorizing arrests at airport only allowed warrantless arrests for misdemeanors committed in officer's presence).

In *Schram, Bond,* and *Perry,* this court applied the same principle to motions to suppress evidence obtained as a result of an unlawful arrest. In *Schram,* we relied on § 23–581(a)(1)(B) in holding that "Schram's arrest was valid only if the police had probable cause to believe a misdemeanor was being committed in their presence." *Supra* note 8, 485 A.2d at 624. Because the officers arrested Schram for the misdemeanor of operating a motor vehicle while under the influence of alcohol or drugs, and it was undisputed that the police arrived at the scene only after Schram had exited the car and was no longer operating it, we held that "the arrest was invalid and the [evidence] taken after the arrest must be suppressed." *Id.* We rejected the District's argument that, even if the arrest was "unlawful as not being authorized by statute," "the arrest was made upon what Schram concedes to be probable cause, and thus, ... there is no constitutional deprivation." *Id.* at 625. Violation of District law was enough to require suppression. In *Perry,* we reached a similar result with respect to an arrest that was "invalid" because the misdemeanor offenses of operating an automobile in excess of the speed limit and while under the influence of intoxicating liquor were not committed in the presence of the officer. 215 A.2d at 847; *see also Allison*

quired for those subsections to be applicable. The section also contains provisions authorizing arrest without a warrant for intrafamily offenses, panhandling, and certain other specifically enumerated offenses. D.C.Code § 23–581(a–1)–(a–5) (2001).

*v. United States,* 623 A.2d 590, 593 (D.C. 1993) (describing *Schram* and *Perry* and concluding, "we held that evidence must be suppressed because in each case, although the arresting officer had probable cause, he lacked legal authority to make the arrest"). In *Bond,* we rejected a defendant's argument that his warrantless arrest was illegal, answering in the affirmative the dispositive question of whether the officer had probable cause to believe a felony had been committed. 310 A.2d at 223–24.

In *(Gerry) Scott,* the circuit court held that even though a particular officer had probable cause to believe that appellant Scott had committed a DUI, he lacked authority to make an arrest under District of Columbia law because the offense was not committed in his presence, pursuant to § 23–581(a)(1)(B). 322 U.S.App.D.C. at 81, 101 F.3d at 754. Although the court observed that Scott would have prevailed against that officer under this "technicality of District of Columbia law," the court held that Scott was actually not arrested until later, by other officers with a different justification. *Id.; see also United States v. Williams,* 244 U.S.App.D.C. 20, 21, 754 F.2d 1001, 1002 (1985) (remand required on trial court's denial of Williams' motion to suppress evidence seized when he was arrested for violating the District of Columbia disorderly conduct statute, where record was susceptible to the reading that the misdemeanor had not occurred in the officers' presence, which would invalidate the arrest under District of Columbia law).

Despite this long line of cases recognizing the "in the presence" requirement, broad language we have used in some cases may suggest that an officer cannot

be held liable for false arrest as long as the officer had "constitutional" probable cause to arrest. *See, e.g., District of Columbia v. Minor,* 740 A.2d 523, 529–31 (D.C.1999); *Tillman v. Washington Metro. Area Transit Auth.,* 695 A.2d 94, 96 (D.C. 1997); *District of Columbia v. Murphy,* 631 A.2d 34, 36 (D.C.), *aff'd on reh'g,* 635 A.2d 929 (D.C.1993); *Welch v. District of Columbia,* 578 A.2d 175, 176 (D.C.1990); *Wade v. District of Columbia,* 310 A.2d 857, 862–63 (D.C.1973) (en banc).[10] Other cases omit the "constitutional" element but still appear to provide a defense if the officer can show he had "probable cause." *Minch v. District of Columbia,* 952 A.2d 929, 937 (D.C.2008); *(Sharon) Scott,* 493 A.2d at 321; *Safeway Stores, Inc. v. Kelly,* 448 A.2d 856, 862 (D.C.1982). Citation is then made to cases which broadly define probable cause as "determined by reference to the objective standard used to determine probable cause in a criminal proceeding...." *Tillman,* 695 A.2d at 96; *Murphy,* 635 A.2d at 931; *see also Brown v. United States,* 590 A.2d 1008, 1012 (D.C. 1991) (officer has probable cause if he has reason to believe that a person has "committed" or is "committing an offense") (citations omitted).

Allowing such a sweeping defense to a false arrest action would appear to be in conflict with our holdings in *Schram, Perry,* and *Bond.* In this regard, a recent decision from the Supreme Court may be informative. In *Virginia v. Moore,* 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008), the Court held that it would not consider "state-law arrest limitations" in determining what is constitutional in the

---

**10.** These cases also expound the correct principle that an alternate legal justification for an arrest, employing a lesser standard, exists on a showing that the officer reasonably believed, in good faith, that his conduct toward the plaintiff was lawful. *E.g., Murphy,* 631 A.2d at 36. The trial court here gave an instruction to this effect taken from Standardized Civil Jury Instructions for the District of Columbia § 18.03. No argument is made for sustaining the judgment on this basis as a matter of law.

arrest context, reasoning that the Fourth Amendment and the related issue of suppression should be applied on a uniform basis across the nation. *Id.* at 175, 128 S.Ct. 1598. *Moore* was an appeal from the denial of a motion to suppress made under the Fourth Amendment, and the Court's concern in that case was that "the arrest rules that the officers violated were those of state law alone, and as we have just concluded, it is not the province of the Fourth Amendment to enforce state law." *Id.* at 178, 128 S.Ct. 1598. The offense in *Moore,* driving on a suspended license, was committed in the presence of the officer but was a non-arrestable offense under Virginia law. *Id.* at 167, 128 S.Ct. 1598. The Supreme Court had previously said with respect to misdemeanor arrests that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). The *Moore* court cites to that case, among others, and the ultimate summary of its holding is that "[w]hen officers have probable cause to believe that a person has committed a crime *in their presence,* the Fourth Amendment permits them to make an arrest...." 553 U.S. at 178, 128 S.Ct. 1598 (emphasis added).

We think our language purporting to equate probable cause with a privilege against false arrest must be read in context. To define the concept of "probable cause" by reference to the federal standard is useful and appropriate in giving substance to the concept of what constitutes a "reasonable belief" that a particular offense has been committed. We see no indication, however, that the cases intended to extend the definition of the specific offenses or crimes for which an arrest may be made under our statute. It appears that the cases suggesting an equation between the constitutional probable cause standard and the defense of privilege in a false arrest suit typically involved arrests for a clear felony or for a misdemeanor for which an arrest might be made under our statute and, in any event, in none of them was any issue raised that the arrest violated the statute. *See, e.g., Murphy,* 631 A.2d at 37 (offenses were unlawful entry and simple assault committed against arrestee's live-in girlfriend, which may have qualified as an intrafamily offense under § 23–581(a–1)); *Welch,* 578 A.2d at 175 (offense was "first degree theft"). We are unable to conclude that the general language in these cases can undercut the clear holdings of our cases applying the statutory limitations to the circumstances under which officers may lawfully and without liability arrest without a warrant. Without the availability of a sanction for an officer's exceeding his authority under D.C.Code § 23–581, the statute's limitations on the arrest power would be rendered effectively nugatory.[11]

Other jurisdictions have construed local laws similar to the District's and held that an action for false arrest will lie if the arrest was made in contravention of the local law, despite the presence of probable cause. *See Bailey v. Kennedy,* 349 F.3d 731, 746 (4th Cir.2003) (construing North Carolina statute allowing warrantless arrests for misdemeanors not committed in officer's presence only when suspect will

---

11. A somewhat similar issue may arise when a plaintiff brings an action under both 42 U.S.C. § 1983 and the common law. We have held that a judgment in favor of the defendant under the federal statute is not necessarily controlling on liability under a common law cause of action. *See Scales v. District of Columbia,* 973 A.2d 722, 729 (D.C. 2009).

not be apprehended unless immediately arrested or may cause physical injury or property damage); *Collins v. Sadlo*, 167 Ga.App. 317, 306 S.E.2d 390, 392 (1983) (construing Georgia statute that allows for warrantless arrests for offenses not committed in officer's presence only when exigent circumstances exist); *Great Atlantic & Pacific Tea Co.*, 261 A.2d at 738–39 (under Maryland law, no authority to arrest simply on probable cause that misdemeanor had been committed; clarifying that "probable cause is not a defense to an action for false imprisonment but legal justification is"); *Ware v. Dunn*, 80 Cal. App.2d 936, 183 P.2d 128, 132–33 (1947) (noting the in-the-presence rule and observing, "[w]e are not cited to a single case involving a misdemeanor wherein the conduct of an officer in making an arrest or detaining a person was considered in the light of 'reasonable grounds' or 'probable cause' for causing such detention").

In *Collins*, the Georgia Court of Appeals reversed an award of summary judgment for the defendant officer in a false arrest case where the arrest was made without a warrant, for a crime not committed in the officer's presence. 306 S.E.2d at 391. A Georgia statute held that such an arrest may only be made if exigent circumstances existed. *Id.* The court was nevertheless confronted with a prior decision of the Georgia Supreme Court that appeared to hold that officers may defeat a false arrest claim simply by showing probable cause existed for the arrest. *Id.* at 392. The Court of Appeals held that the award of summary judgment could not stand be-

cause under the clear language of the statute, the arrest was only valid if exigent circumstances existed, and issues of fact remained as to the existence of these exigent circumstances. *Id.* The court stated, "It is clearly apparent that the use of 'probable cause' in [the Georgia Supreme Court opinion] was a short-hand reference, commonly employed by courts in warrantless situations, to mean the existence of probable cause *and* exigent circumstances as the basis for upholding the warrantless action. . . ." *Id.* We think the Georgia court's approach is correct, and we adopt it here.[12]

Section 23–581, and our cases construing it, compel a conclusion that a warrantless arrest for a misdemeanor not committed in the officer's presence constitutes a common-law false arrest, unless the defendant can show that the requirements listed in § 23–581(a)(1)(C), (a)(1)(D), or (a–1)–(a–5), have been met. Language in prior decisions of this court that suggests a defendant may defeat a common-law false arrest claim merely by showing "probable cause" existed must be read to incorporate the common-law requirements for a lawful arrest. We reaffirm that, as our cases have said, probable cause will defeat a claim of false arrest, but we clarify that this is only true to the extent that "probable cause" is synonymous with legal justification to effect the particular arrest in question. This is because in actions for false arrest and false imprisonment, the "central issue" has always been "whether the arresting officer was justified in ordering the arrest of the plaintiff." *Moorehead*

12. The language of the standard jury instruction for justification for arrest by a law enforcement officer, now § 18.03, has differed markedly over the years. The original instruction in 1968 permitted warrantless arrests only for felonies and for misdemeanors specified in the statute. The 1981 edition also was limited to the statutory crimes. In the 1988 revision, the instruction was extensively expanded and language included that stated that an arrest is justified if the officer had probable cause, defined as reason to believe that a "crime" has been or is about to be committed, apparently based on what we conclude to be a misreading of *Murphy* and like cases, as discussed above.

*v. District of Columbia*, 747 A.2d 138, 147 (D.C.2000); *Murphy*, 631 A.2d at 36; (*Sharon*) *Scott*, 493 A.2d at 321. Where probable cause is merely used as a synonym for a particular quantum of suspicion to believe a crime has been committed, without more, it will not defeat a common-law claim of false arrest.

■ In the present case, where the arrest was effected without a warrant, the court was obligated to instruct the jury that a defendant can defeat a false arrest claim by showing the arrest was legally justified. Legal justification to effect a warrantless arrest, in turn, means either probable cause to believe a felony has been committed or probable cause to believe a misdemeanor has been committed in a manner specified in § 23–581.[13] Because the court's instructions in the present case instead allowed the jury to find the District had defeated the claim on a lesser showing, the instructions were erroneous and prejudicial.[14]

### III. The District's Arguments

■ It is, of course, true that we may affirm a judgment on any valid ground, even one not relied on by the trial court, provided the appellant will suffer no procedural unfairness. *Randolph v. United States*, 882 A.2d 210, 218 (D.C.2005); *In re Walker*, 856 A.2d 579, 586 (D.C.2004). Therefore, we now turn to the two arguments that the District asserts are sufficient to affirm the judgment, even if the trial court's instruction was erroneous, and

which, indeed, the District presents to us as the only two issues on appeal.

#### A. Adequacy of the § 12–309 Notice

■ Five months after the collision, Enders sent a letter to the Mayor of the District of Columbia, stating his intent to file a false arrest claim against the District "in connection with a false arrest made of [him] on 1/27/2002 by an officer of the Metropolitan Police Department." This letter was apparently an attempt to comply with the requirements of D.C.Code § 12–309, which states:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

D.C.Code § 12–309 (2001). After sending the letter, Enders filed his complaint for false arrest in the Superior Court.

The District moved in the trial court to dismiss, arguing that the letter was insufficient notice under § 12–309 because it did not state the place of the injury or the underlying circumstances. The trial court denied the motion, stating, "While the notice letter did not explicitly state the 'circumstances' and 'place' of the injury, the

---

13. The instructions may also properly inform the jury that, as our cases have said, a defendant may defeat a false arrest claim by showing the defendant had a reasonable, good-faith belief in the legality of the arrest. *See supra* note 10.

14. We cannot say, with fair assurance, that the error in the present context was harmless.

*See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Given the erroneous instructions and the context of the trial, the jury clearly could have based its verdict solely on the conclusion that the police had probable cause of the claimed misdemeanors but not of any felonies. *See, infra*, Part III.B.

police record of the arrest provided that information." We think the trial judge was correct.

■ Section 12–309 was designed to "(1) protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Gaskins v. District of Columbia,* 579 A.2d 719, 721 (D.C.1990) (quoting *Pitts v. District of Columbia,* 391 A.2d 803, 807 (D.C.1978)). The plain language of the statute allows for a written police report, standing alone, to constitute sufficient notice. D.C.Code § 12–309 (2001). The District concedes that the letter provided by Enders, read together with the police report of the arrest Enders identifies in the letter, provides all of the required notice under the statute. However, it argues that the trial court should not have read the two documents together as providing adequate notice, because the language and purpose of the statute show that "the document purporting to satisfy the statute … must independently contain all of the information required by the statute." Our case law leads to the opposite conclusion.

This court has long held that "although strict compliance with § 12–309's requirement that timely notice be given to the District is mandatory, greater liberality is appropriate with respect to the content of the notice." *Wharton v. District of Columbia,* 666 A.2d 1227, 1230 (D.C.1995); *see also Washington v. District of Columbia,* 429 A.2d 1362, 1365 (D.C.1981) (en banc) ("with respect to the details of the statement giving notice, precise exactness is not absolutely essential") (citations and quotation marks omitted); *Doe by Fein v. District of Columbia,* 697 A.2d 23, 27 (D.C. 1997) (content requirements are to be interpreted liberally, and "in close cases

doubts are to be resolved in favor of compliance"). We have observed that "[t]he degree of specificity required under the statute … is the same whether the claimant provides written notice to the District or relies instead on an official police report." *Washington,* 429 A.2d at 1365.

Contrary to the District's argument, this jurisdiction has not required that the District be given notice of an impending suit in a single document. *See Hurd v. District of Columbia,* 106 A.2d 702, 704 (D.C. 1954). In *Hurd,* the defect in one letter sent to the office of the Corporation Counsel was cured by a second letter sent to the Inspector of Claims. *Id.* Even though the two notices were sent to different offices within the District government, the statute's purpose was satisfied: "From the two letters there is no doubt that the District could have located the place of injury, and made a sufficient investigation to decide whether to settle the claim or prepare to defend against it." *Id.* This court has held in subsequent cases that where the District is given facts that would allow it to comprehend through a reasonable investigation the circumstances underlying the claim, the notice is sufficient. *See Gaskins,* 579 A.2d at 722 (notice sufficient where it identified location of fall as somewhere on a 150–foot stretch of sidewalk); *Dixon v. District of Columbia,* 168 A.2d 905, 907 (D.C.1961) (letter sufficient where it indicated fall occurred on sidewalk rather than in gutter); *Romer v. District of Columbia,* 449 A.2d 1097, 1101 (D.C.1982) (plaintiff did not need to include loss of consortium claim in notice letter where investigation by District could disclose plaintiff's marital status and thus existence of possible claim). In *Allen v. District of Columbia,* 533 A.2d 1259 (D.C. 1987), we held that a letter to the Mayor's office provided adequate notice under § 12–309 when it gave the District enough

information to "enable[ ] the District to initiate its investigation by obtaining police reports and other prosecution records concerning the criminal case." *Id.* at 1264. This was so because it "provid[ed] the District with the details necessary for it to go directly to the governmental departments involved in the injuring event and receive additional information about the basis for the claim." *Id.* Given these precedents, and given that a police report in itself can suffice to provide adequate notice to the District, we hold the notice given in this case was sufficient to satisfy § 12–309.

### B. Judgment as a Matter of Law

█ The District alternatively contends as a ground for affirmance that as a matter of law, there was no false arrest in this case. It argues that, even viewing the evidence in the light most favorable to Enders, it must be concluded that the officers had probable cause to arrest for malicious destruction of property in excess of $200, a felony offense.[15] Although Enders was never charged with this offense, the District correctly asserts that in defending against a claim of false arrest, the District can prevail if it can show that probable cause existed to arrest for any offense, even if it differs from the offense for which the arrest was actually made, provided that the consequences for the plaintiff probably would have been substantially as unfavorable.[16] *Etheredge v. District of Columbia,* 635 A.2d 908, 920–21 (D.C.1993). The problem, however, is that in our judgment, the limited record here does not support a finding of probable cause on felony destruction of property as a matter of law so as to remove the issue from a properly instructed jury.

█ The issue of probable cause in a false arrest case is a mixed question of law and fact that the trial court should ordinarily leave to the jury. *Murphy,* 631 A.2d at 36; *Safeway Stores,* 448 A.2d at 862; *May Dep't Stores Co. v. Devercelli,* 314 A.2d 767, 771 (D.C.1973). It is only where the facts are undisputed or clearly established that probable cause becomes a question of law for the court. *Henderson v. District of Columbia,* 493 A.2d 982, 994 (D.C.1985); *Safeway Stores,* 448 A.2d at 862. "Where the undisputed facts considered in the light most favorable to the [arrestee] establish probable cause, then a directed verdict or judgment n.o.v. is appropriate." *Safeway Stores,* 448 A.2d at 863. Judgment as a matter of law cannot be granted unless the evidence is "so clear that reasonable men could reach but one conclusion." *District of Columbia v. Gandy,* 450 A.2d 896, 900 (D.C.1982) (declining to grant District judgment as a matter of law on issue of whether officers had reasonable suspicion to conduct a *Terry* stop), *vacated in part on reh'g,* 458 A.2d 414 (D.C.1983).

█ The determination of whether probable cause existed must be made based on the information known to the arresting officers. *See Murphy,* 631 A.2d at 37 n. 4 (observing the "curious double perspective" courts must undertake when considering whether as a matter of law officers had probable cause to arrest). We must therefore analyze the evidence presented to the arresting officers at the scene, in the light most favorable to Enders, to determine whether a reasonable jury must have reached only one conclusion, that the officers had probable cause to arrest for malicious destruction of property of $200 or more.

---

15. More precisely, the damage must be "$200 or more." D.C.Code § 22–303 (2001).

16. And provided that, in a warrantless arrest context, the offense was arrestable pursuant to D.C.Code § 23–581. See, *supra,* Part II.

The difficulty we have in coming to such a conclusion as a matter of law is the paucity of evidence as to the damage to Cravedi's car that was visible at the scene. The testimony of Enders and of Cravedi were starkly at odds on this issue, both as to cause and as to extent. The only visual evidence of damage was provided by Enders, through a photo that he obtained from police records. The photo, which is part of the record on appeal, only shows a small white mark on the far left side of Cravedi's bumper area. Cravedi's car was blue; Enders' car was red. While Cravedi testified that the mark was a scratch or dent several inches long that contained a bit of red paint, she admitted that none of these details were revealed by the photograph. Enders asserted that the marking was minimal at best and may even have pre-existed the incident. Cravedi also testified that the repair to the scratch cost her $220, but no receipt for the repairs or other supporting evidence was presented; and, of course, the officers did not have any such information at the time of the arrest. Moreover, with the burden of proof on the government, the jury had no obligation to credit all the testimony of the possibly biased Cravedi as to what the scene itself presented.[17]

As already mentioned, the District did not present the testimony of any officer who had any recollection of the investigation, although about a half-dozen officers eventually became involved.[18] The several police documents submitted into evidence were totally silent on the matter, save a single notation that the impact caused "minor damage." Although it is not determinative, it is noteworthy that no charge of malicious destruction of property was brought against Enders.[19] Indeed, Enders testified that during the hour or so when the officers were trying to figure out what to do, "one after another, the officers that were there came over and looked at the cars, looked at the bumpers, just peered high and low, looking all around the back bumper of her car, the front bumper of mine, looking for damage.... Eventually they gave up and went back to the coffee and conversation on the other side of the street." Also in evidence was Enders' statement that he only lightly tapped Cravedi's rear bumper, as one would if one were parallel parking. Even if the jury believed the white mark on Cravedi's bumper was caused by Enders' actions that day, the jury could certainly see the size of this mark as consistent with Enders' account of how light the contact was.

 To be sure, as already noted, the relevant inquiry in a false arrest defense is not what the actual facts may be but rath-

**17.** Enders in cross-examination raised issues of Cravedi's complete credibility by showing inconsistencies between her account of the incident as reflected in the police documents and her testimony at trial, particularly as to whether Enders' car hit her bumper squarely from behind or more to the side, where the white mark was located.

**18.** The limited nature of the evidence at trial, the evidentiary portion of which occupied only a single afternoon, may have been affected by the pretrial ruling of the trial court that probable cause to arrest for any crime or offense would suffice to insulate the District from liability.

**19.** A citation was issued for leaving the scene of an accident, which is an offense only if the accident caused "substantial" damage. D.C.Code § 50–2201.05(a)(1) (2001). We do not think this aspect can tip the balance to a finding of probable cause of $200 damage as a matter of law, and the District makes no argument to this effect. Precisely what the word means in context and whether "minor damage" qualifies may be debated. Moreover, there was testimony by the sole police officer that indicated that he had no understanding that such damage was required as part of the offense.

er what the officers could reasonably conclude from what they were told and what they saw on the scene. *Murphy,* 631 A.2d at 37 n. 4. Furthermore, the determination by an officer that probable cause exists "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Gerstein v. Pugh,* 420 U.S. 103, 121, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). This jurisdiction does not impose on arresting officers "the duty of a ... positive and direct ascertainment of the exact amount of the money" in determining whether probable cause exists for a crime involving a dollar value. *Maghan, supra,* 67 App.D.C. at 10, 88 F.2d at 1002.[20] But where, as here, the evidence of the amount of the damage was so limited and in conflict, we simply cannot conclude that there was "undisputed evidence *requiring* a conclusion, as a matter of law, that the officers had a reasonable, good faith belief in the lawfulness of the arrest." *Murphy,* 631 A.2d at 38 (emphasis added). Rather, in this case, "[s]ince the facts necessary to a finding of probable cause were in dispute, the court did not err in leaving the resolution of that factual dispute to the jury." *Henderson,* 493 A.2d at 994; *see also May Dep't Stores,* 314 A.2d at 772 (given conflicting testimony, "it was manifestly for the jury to weigh the evidence"

and determine whether probable cause existed).[21]

Accordingly, we vacate the judgment in favor of the District and remand for a new trial.

*So ordered.*

---

**20.** In *Maghan,* as already recounted, the required value for a felony was $35. The court noted that it was undisputed that the purse contained $30 and that the purse itself must have had some value. It thus characterized the issue as a "border-line" case. 67 App. D.C. at 10, 88 F.2d at 1002.

**21.** We decline to consider the District's contention, made only in passing, that probable cause existed as a matter of law for ADW (car). The District does not make any arguments or cite any authority in support of this contention. Rather, after briefing the issue of probable cause of malicious destruction of

property in excess of $200, the District simply asserts in a footnote that probable cause also existed for ADW but that "the Court need not reach this issue." While the principle may not apply to appellees with the same force as appellants, we have noted that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McFarland v. George Washington Univ.,* 935 A.2d 337, 351 (D.C.2007); *see also Bardoff v. United States,* 628 A.2d 86, 90 n. 8 (D.C.1993) (arguments raised but not argued in briefing are treated as waived).